## WRIGHT v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted February 6, 1923. De-
cided April 3, 1923.)

No. 3892.

1. **Criminal law ⬤⟳1169(11)—Admission of hearsay written statement showing another offense held prejudicial.**

In a prosecution for embezzlement, the admission in evidence of a hearsay written statement, made by one who was not a witness in the case, charging defendant with the offense of obtaining property by false pretenses, would naturally tend to discredit the defendant in the estimation of the jury, and the fact that it was in writing and signed made it all the more prejudicial.

2. **Witnesses ⬤⟳287(4)—Right to show whole transaction on redirect examination does not make written statement by one not witness admissible.**

Where accused, in a prosecution for embezzlement, cross-examined the prosecuting witness with reference to another transaction, for the purpose of showing that the accused and the prosecuting witness were partners, the right of the prosecution to show that entire transaction did not entitle it on redirect examination to introduce in evidence a writing made by one who was not a witness in the case, charging accused with obtaining property by false pretenses, as a part of that other transaction.

3. **Criminal law ⬤⟳419, 420(12)—Exhibit held hearsay accusation, not receipt.**

A written instrument, addressed to whom it might concern, and certifying the signer had received a stated amount in full settlement for property, secured from the signer by accused through false pretenses, was not a mere receipt, but was in fact a hearsay accusation against accused, made in his absence, especially where the evidence tended to show that the paper was not signed at the time the money was paid, but at a later date, for the purpose of using it in the prosecution of accused.

4. **Criminal law ⬤⟳1043(2)—General objection is sufficient, if exhibit is short and manifestly incompetent.**

An objection to the admission in evidence of an exhibit, on the ground it was irrelevant, immaterial, and referred to another matter, was sufficient to preserve the question on appeal, where the exhibit consisted of a brief writing, which could be read at a glance, and which appeared on its face to be wholly hearsay.

Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Thomas J. Wright, otherwise known as Charles M. Wells, was convicted of embezzlement, and he appeals. Reversed, and new trial awarded.

H. E. Bolt and Raymond Neudecker, both of Washington, D. C., for appellant.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, and ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MARTIN, Acting Associate Justice. This is an appeal from the Supreme Court of the District of Columbia. The appellant, Thomas J. Wright, otherwise known as Charles M. Wells, was convicted in that court of the crime of embezzling the sum of $50 in money, from one James S. Stephens, his employer. He was sentenced to a term of imprisonment.

It was claimed by the prosecution that Stephens owned and conducted a retail store, called "The Trench," in the city of Washington; that he employed the defendant to work for him on a commission basis of 35 per cent. of the profits; that the defendant commenced work under that agreement, and while so employed collected $50 from a customer for goods sold and delivered; that the defendant furtively converted the money to his own use, and when questioned about it denied ever having received it.

The defendant became a witness in his own behalf. He testified that he had entered into a contract with Stephens, whereby he was to work at "The Trench," and to receive 35 per cent. of the profits of the business as compensation, and that he commenced work under that contract, but that afterwards Stephens proposed that each should bear one-half of the expenses of the business, and be entitled to receive one-half of the profits, and that they continued the business thereafter under that arrangement. These statements of the defendant were introduced as tending to prove a partnership arrangement between the parties.

No exception was taken by either party to the charge of the court, which, among other things, contained an instruction that, if the jury found that the parties were partners at the time of the alleged transaction, they should acquit the defendant. Various exceptions, however, were taken by the defendant to the court's rulings during the introduction of the evidence. We will not mention these in detail, since in our opinion only one of them was well taken. That one, however, discloses a ruling which seems to us to be fatally erroneous.

At the trial the government called the prosecuting witness, Stephens, as the first witness in the case. He denied that there had ever been a partnership agreement between himself and the defendant. Upon cross-examination by the defense, he testified to an incident which occurred at "The Trench," when certain bead chains belonging to a Mr. Goggin, and which had been left there on consignment, were lost in a robbery. The witness stated that Goggin had requested payment for them, claiming their value to be $24, and that the witness had paid one-half of the amount claimed.

It is apparent that this testimony was called out by the defendant in the cross-examination of Stephens, as tending to prove a partnership between the parties, since they had borne this loss in equal shares. The testimony of Stephens, to the effect that he had paid one-half of the loss in question, did not contradict the defendant upon that subject. Thereupon, on the redirect examination of the witness Stephens, the following is disclosed by the record:

Then the witness was handed a paper, marked Exhibit F, and asked to identify same, if he could, the same being in the following form and substance:

"Ex-Service Men's Arts and Crafts Shop,
"1417 F Street Northwest, Washington, D. C.

"August 31, 1921.

"To Whom It may Concern:

"This is to certify that I have received the amount of twelve dollars ($12.00) from J. S. Stephens in settlement in full, thus relieving him of any further responsibility for the following chains, which were secured from me by Thomas J. Wright, alias C. M. Wells, who secured them through false pretenses by representing himself to be the rightful and lawful owner of the establishment known as The Trench, the Ex-Service Men's Arts and Crafts Shop, Washington, D. C., on July 7, 1921.

"2 black glass bead chains.
"1 white glass bead chain.
"2 steel bead chains.
"1 gold glass bead chain.

"[Signed]   William Goggin."

Thereupon the defendant, by his attorneys, objected that Exhibit F be accepted as evidence, on the ground that same was irrelevant, immaterial, improperly identified, that the witness could not identify same, and same does refer to another matter. Such objections were overruled by the court, to which ruling the defendant by his attorney duly excepted. Exhibit F was admitted as evidence. The witness then testified that Exhibit F was a receipt, signed William Goggin, dated August 31, 1921, for money that the witness had paid Mr. Goggin.

[1] We think that the admission in evidence of the foregoing paper, over the objection of the defendant, was clearly prejudicial error; for it was written and signed in the absence of the defendant, by a person not under oath, and it contained a charge that the defendant had committed the crime of obtaining property by means of false pretenses, in a transaction which was foreign to that charged in the indictment. Such a charge would naturally tend to discredit the defendant in the estimation of the jury, and lead them to believe that he was a dishonest and untruthful man. The fact that the charge was in writing, and signed, made it all the more prejudicial.

[2, 3] It may be claimed, however, that the paper was made competent as evidence by reason of the fact that Stephens had been cross-examined by the defense regarding the loss of the bead chains, and that this gave the prosecution a right, upon redirect examination, to inquire fully into the same subject. But such a claim would fail to meet the present objection; for while the prosecution, under the circumstances, may have been entitled to have Stephens tell all that he knew about the bead chains, it was not entitled to have him tell what Goggin had told him about them in the absence of the defendant, for that would be mere hearsay, and the writing now in question is no more than that in this case. It is a misnomer to call such an instrument a "receipt." It was in fact a vehicle to convey to the jury an accusation against the defendant, made in the defendant's absence by Goggin, who at the time was not under oath, and who in fact never became a witness in the case.

Another objection to the paper as evidence is this: That the record fairly discloses, not directly, but by convincing implication, that the writing was not signed and delivered by Goggin to Stephens as a receipt for the $12 at the time when it was actually paid, but at a later date, and that it was then drawn up in the form in which it appears for the

express purpose of using it as evidence in the present prosecution. This conclusion is justified by a comparison of the dates of the several transactions, and also by the heading of the paper itself, to wit, "To Whom It may Concern." And, furthermore, the prosecuting witness himself testified "that he obtained Exhibit C and Exhibit F [this paper] for the purpose of prosecuting the defendant." Accordingly we are justified in believing that the instrument was not delivered as a part of the transaction which it professes to attest, but is a declaration which was subsequently made, for use as evidence in a contemplated prosecution of the defendant.

[4] We have not overlooked the fact that the objection to the testimony in question was stated by defendant's counsel in somewhat general terms. It was said to be "irrelevant, immaterial, * * * and same does refer to another matter." It has been held by the courts in given instances that the designations "irrelevant" and "immaterial" are not sufficiently specific to advise a trial court of the exact ground for the objection. We think, however, that the statement was sufficiently specific in this case, since the testimony in question consisted of a brief writing, which could be read at a glance, and which appeared upon its face to be mere hearsay. The subject is covered by 26 R. C. L. § 57, as follows:

"Again, where the portion of the evidence objected to is clearly pointed out, and its illegality is apparent on its face, then the objection must be allowed. Indeed, the very reason why the court may disregard objections to evidence, when the particular grounds of the objection are not stated, is that the court would have to cast about or look for the grounds on which the objection was made. But when the evidence objected to is clearly designated, and on its face it is illegal, without inquiry into any fact aside from the evidence itself, the objection cannot be disregarded merely because no specific ground of objection is stated."

In Skuy v. United States (C. C. A.) 261 Fed. 316, Justice Sanborn spoke for the court as follows:

"The contention that proper objections were not made, and proper exceptions were not taken, to permit the consideration in this court of the issues which have been discussed, has not escaped attention, but it fails to convince. Hall v. United States, 150 U. S. 76, 80, 82, 14 Sup. Ct. 22, 37 L. Ed. 1003; Waldron v. Waldron, 156 U. S. 361, 380, 381, 382, 15 Sup. Ct. 383, 39 L. Ed. 453. And even if it were tenable this is a trial for an alleged crime, it involves the liberty of the citizen, and the fault in the trial is so radical that it may well be noticed and corrected by this court without objection, exception, or assignment. Wiborg v. United States, 163 U. S. 632, 659, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; August v. United States, 257 Fed. 388, 391, 393, 168 C. C. A. 428."

See, also, Freed v. United States, 49 App. D. C. 397, 266 Fed. 1012; Sparf v. United States, 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343.

Judgment reversed, and a new trial awarded.

SMYTH, Chief Justice (dissenting). This case is reversed on the sole ground that the court erred in admitting Exhibit F, set out in the opinion. The exhibit relates to a transaction between the complaining witness and one Goggin concerning payment for certain "bead chains" left by Goggin with the defendant, and afterwards lost. In his examination in chief the witness was not interrogated about the

transaction, but on his cross-examination counsel questioned him relative to it. No reference, however, was made to the exhibit. On his redirect the government had him identify the exhibit, and then offered it in evidence. I assume this was done upon the theory that, the defendant having shown a part of the transaction, the government was entitled to the whole transaction. In this I think the government was right, and the court committed no error in admitting the exhibit. It has been held that, where a witness testifies to part of a transaction connected with the issuing of an attachment, he may be asked as to an act subsequent to the attachment, but forming a part of the same transaction. Eames v. Kaiser, 142 U. S. 488, 12 Sup. Ct. 302, 35 L. Ed. 1091. See, also, Lancaster v. Collins, 115 U. S. 222, 6 Sup. Ct. 33, 29 L. Ed. 373, Home Benefit Association v. Sargent, 142 U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1160, Fitzpatrick v. State, 37 Tex. Cr. R. 20, 30, 38 S. W. 806, and Lange v. Klatt, 135 Mich. 262, 97 N. W. 708.

But even if this were not so no error was committed, since no objection was made to the reception of the exhibit in evidence. When the witness was asked to identify it, the defendant objected, as set forth in the opinion. The objection was properly overruled, because the government clearly had the right to have the exhibit identified. It is true that the defendant also objected on the ground that the exhibit was irrelevant and immaterial; but this objection was manifestly inapplicable to the pending question, namely, whether or not the witness could identify the exhibit. This view is strengthened by the fact that the witness did not identify Goggin's signature until after the ruling on the objection. The record is inartificially prepared, for it fails to show that the exhibit was offered in evidence, but says that it was admitted in evidence before the witness had proved Goggin's signature to it. However this may be, since the burden was on the appellant to show affirmatively that the court erred in admitting it, his failure to establish that he objected to its admission compels the conclusion that no error was committed. Defendant does not argue in his brief that the exhibit was incompetent because hearsay. His only complaint with respect to it is bottomed upon the assumption that it was not properly identified, and so little importance does he attach to this that he devotes to it only 3½ lines of his 11-page brief.

If it be assumed that objection was made to the admission of the exhibit, it was insufficient. The exhibit may have been incompetent, because hearsay, but it was not immaterial or irrelevant. Evidence is said to be material and relevant which goes to the substantial matters in dispute and has a legitimate influence or bearing on the decision of the case. The exhibit responds to these tests. On the other hand, incompetent evidence may be logically relevant and material, and yet inadmissible, because not competent; that is, because not the character of proof which the law permits in the particular case. Hearsay testimony falls within this category. Sometimes objection on the ground of incompetency is held to comprehend irrelevancy and immateriality, but the reverse is never true. 22 C. J. 65. There was, then, in effect no objection on the ground that the exhibit was hearsay, and hence there was no error in receiving it.

It is a great mistake to assume that the rule in civil cases, which requires the objector to specifically point out the feature objected to, does not apply in criminal cases. The Supreme Court of the United States, which is our guide, has frequently held that it does apply. It was applied in Queenan v. Oklahoma, 190 U. S. 548, 551, 23 Sup. Ct. 762, 47 L. Ed. 1175, where the defendant was convicted of murder and sentenced to be hanged, and in Allis v. United States, 155 U. S. 117, 122, 15 Sup. Ct. 36, 39 L. Ed. 91, where the defendant was sentenced to five years in the penitentiary. In a few cases the court noticed the vice disclosed by the record, where it affected a matter "absolutely vital to the defendant," though the attention of the lower court was not properly directed to it, as where the evidence of guilt was utterly lacking, but only in such cases. The case before us does not belong in that class. Whether or not the exhibit was injurious or beneficial to the defendant is an open question. Apart from the phrase, "who secured them through false pretenses by representing himself to be the rightful and lawful owner of the establishment known as 'The Trench,'" it is favorable to him. It tends to show that the complaining witness was responsible for only one-half of the value of the bead chains lost. The defendant testified that he was liable for the other half, and paid it. Hence the exhibit was in line with his defense that he was a partner of the complaining witness. Surely this exhibit cannot be properly spoken of as bearing upon a matter "absolutely vital" to the defendant.

As I read Sparf v. United States, 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343, Skuy v. United States (C. C. A.) 261 Fed. 316, and 26 R. C. L. § 57, p. 1051, they do not support the conclusion of the majority. In the first case, the offer was objected to as immaterial, irrelevant, and incompetent, but it was insisted that this was not sufficiently specific—that counsel should have pointed out wherein lay the defect objected to. The court said that the infirmity of the testimony appeared upon the very face of the question itself, and therefore that the objection was sufficient. But it was careful to emphasize the point "that an objection should be so framed as to indicate the precise point upon which the court is asked to rule." 156 U. S. 57, 15 Sup. Ct. 275, 39 L. Ed. 343. Judge Sanborn, in the Skuy Case, said that the thing complained of was "so radical" that a court of justice could not disregard it, and a glance at the opinion will show that he was right. The quotation from 26 R. C. L. § 57, p. 1051, is in harmony with my position, as the opening sentence shows.

It is a wise practice which requires a party to direct the mind of the trial court to the specific thing objected to as a condition precedent to his right to assign error in this court. Its observance would render unnecessary many appeals, and would thus contribute to the speedy and effective administration of the criminal law. The practice approved in this case is loose and unskillful, and should not be encouraged.

For that reason I dissent.