## HATCHET v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted October 3, 1923. Decided December 3, 1923.)

No. 3992.

**Criminal law** ⬥⬥369(5), 1169(11)—Admission of evidence of arrest for other crime held error, requiring reversal.

Where, in a prosecution for larceny, defendant did not testify, and there was no issue as to his identity, admission of evidence that his picture was in the rogues' gallery, in connection with another arrest under a different name for a similar offense, *held* error requiring reversal.

Appeal from the Supreme Court of the District of Columbia.

John Hatchet, otherwise known as John Brown, was convicted of larceny, and he appeals. Reversed, and new trial awarded.

James A. O'Shea, of Washington, D. C., for appellant.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BAILEY, Justice of the Supreme Court of the District of Columbia.

⬥⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District upon the verdict of a jury convicting appellant and another of the crime of larceny. The evidence for the government tended to show that, while Mike Bavoul was standing on a street car platform in the city of Washington, on the 9th day of April, 1922, appellant Hatchet and another took from his pocket a pocketbook containing $95; that Hatchet ran, but was pursued and captured.

Among the witnesses for the government were two police officers, who, over the objection and exception of the appellant, were permitted to testify to a conversation with appellant subsequent to his arrest, in which he at first denied, but finally admitted, that he had been arrested before in Philadelphia under another name. One of these officers, Mr. Wilson, testified in part as follows:

"I asked him what was his right name, and he said, 'John Hatchet;' and I asked him if he had ever been arrested, and he said he had not." That after appellant's finger prints had been taken he was again questioned at police headquarters.

Concerning this second examination, Wilson testified:

"He (Hatchet) said he had been arrested in Philadelphia under the name of John Brown, and at that time he lived in the 800 block on Twenty-Fourth street Northwest, 813 or 815. I think that was after I told him something else that I had discovered. That was the second conversation."

Witness was then asked, "What did he [appellant] say he had been arrested for, if anything, in Philadelphia?" and replied, "I believe it was for larceny."

Officer Embrey, who was present when these examinations occurred, testifying, as did Officer Wilson, over the objection and exception of the appellant, said in part:

"He (Hatchet) denied that he had ever been arrested before, and the photographer got a picture by the name of John Brown out of the gallery." That after obtaining this picture the officers took appellant into the inspector's office, where the picture was shown him, "and the inspector told him there he was under the name of Brown, and the finger prints compared and everything, and finally he admitted it was him."

Appellant did not testify.

In Billings v. United States, 42 App. D. C. 413, the admission of testimony almost identical with that objected to here was held to constitute prejudicial error. We there said in part:

"The identity of the accused was not in issue at the trial, and it was not competent for the government to prove that, under another name, he had committed another and independent crime. And yet such was the trend and substantial effect of the evidence of this detective."

After discussing the circumstances under which statements of the accused following his arrest may be admissible at the trial, we further said:

"But we fail to perceive how the denial by the defendant, at the time of his arrest, that he had previously been arrested, could be said to indicate a consciousness of committing this robbery, even although the government had followed up that testimony with proof that he had been thus arrested under another name. The fact in issue was the guilt or innocence of the defendant of the crime charged, and the presumption of innocence attended him at

the trial. And yet the jury were clearly given to understand that he was a man with a criminal record. The language used by the detective was talismanic. Undoubtedly the jury understood that the 'gallery' referred to was the 'rogues' gallery,' and appreciated to the fullest extent the allusion to the photograph which the detective had shown the defendant."

In Ryan v. United States, 26 App. D. C. 74, 6 Ann. Cas. 633, a prosecution for larceny, in which the defendant testified in his own behalf, evidence was introduced tending to show that the accused had in his possession when arrested a forged letter, containing false statements, by means of which, on the morning of the day of the commission of the offense for which he was on trial, he had sought to obtain assistance from a clergyman. The court ruled that this letter did not come within any of the various exceptions to the general rule:

"That evidence tending to show that an accused person has committed, or attempted to commit, another crime, wholly independent of that with the commission of which he stands charged, is inadmissible."

The court then said:

"The possession of the false and forged letter, devised for use in an independent attempt to obtain money from a clergyman, does not appear to have had any connection with the separate and distinct offense charged in the indictment. It was apart from and collateral to the issue to be tried. All that it could tend to show was the depraved character of the accused. Boyd v. United States, 142 U. S. 450, 458, 35 L. Ed. 1077, 1079, 12 Sup. Ct. Rep. 292. No matter how depraved an accused person may be, he must be tried upon competent evidence of the crime charged. His character cannot be shown by the prosecution, unless he himself first puts it in issue."

In that case the judgment was not reversed, for the reason that the defendant, "in testifying on his own behalf, related the facts which established" his guilt, and hence could not have been prejudiced by the admission of the incompetent evidence.

The foregoing decisions are determinative of the question here. There was no issue as to appellant's identity; he did not testify, and yet the government was permitted to place before the jury evidence tending to show that he was a man with a criminal record. While there may have been, and probably was, competent evidence warranting conviction, it would be going far to say that appellant was not prejudiced by the admission of this incompetent evidence. He was entitled to a fair and impartial trial, and that he could not have, after it was made to appear, through the introduction of incompetent evidence, that his picture adorned the rogues' gallery, in connection with his arrest in Philadelphia for a similar offense; in other words that, with criminal propensities, he had operated elsewhere and under another name.

The judgment must be reversed, and a new trial awarded.

Reversed.