App.D.C., 113 A.2d 749, and of petitioner's brief in support of said petition, it is

Ordered by the Court that the aforesaid petition be, and it is hereby, denied.

**John S. FAIRBANKS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 12539.**

United States Court of Appeals District of Columbia Circuit.

Argued April 26, 1955.

Decided June 30, 1955.

Prettyman, Circuit Judge, dissented.

252

Mr. James J. Laughlin, Washington, D. C., for appellant. Mr. Albert J. Ahern, Washington, D. C., also entered an appearance for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Thomas A. Flannery, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, BAZELON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant (defendant) was indicted for the crime of rape on one Bowles, and convicted of the crime of assault with intent to commit rape. His defense was consent on the part of the prosecutrix. The principal ground urged for reversal is based on objections to the admission of certain evidence concerning defendant's actions prior to the offense charged in the indictment. This evidence was introduced as part of the Government's case in chief.

The witness Krawczel testified that on the morning of the alleged rape some one who identified himself as Fairbanks rapped at her door; that he first offered to the witness some groceries and clothes, which she refused; that shortly thereafter he rapped on her door again, this time asking for matches; and that the rapping continued "for an awfully long time." The witness testified that the door was not opened at any time, and that he left when she threatened to call the police. There was no evidence that this man was actually the defendant. The witness did not, of course, identify him personally; and, according to her testimony, she did not know actually whether it was defendant's voice.[1] Under the circumstances of the case, we believe that this evidence was inadmissible.

The witness Nelson testified that six days before the alleged rape defendant rapped at her door at about two o'clock in the morning and asked for matches. The witness procured matches, opened the door wide enough to hand them to the defendant, and noticed that he was clothed only in shorts, with his private parts exposed. The witness testified that he asked to enter and pushed against the door; but it appears that he made no serious effort to enter, made no attempt to touch, injure or molest the witness,

1. Tr., p. 230:
"Q. You did not then see this man? A. No, I didn't see him.
"Q. Someone said this is John Fairbanks, did he? A. Yes.

"Q. You don't know whether it was his voice, do you? A. No; it was sort of low."

used no obscene language, and made no immoral suggestions to her. The evidence was admitted to show disposition.[2]

■ The general rule is that upon the trial of an accused person the prosecution may not introduce evidence of another offense wholly independent of the one charged. However, there are many well established exceptions to this rule, so numerous that it has been said that it is difficult to determine which is the more extensive, the doctrine or the acknowledged exceptions. This Court has admitted evidence of other criminal acts when those acts (1) are so blended or connected with the one on trial that proof of one incidentally involves the other, (2) they explain the circumstances of the offense charged, or (3) they tend logically to prove any element of that offense.[3] (There are other exceptions to the general rule not here relevant.)

This Court has recognized another exception to the general rule, in Hodge v. United States.[4] There it was held that, in a prosecution for incest, evidence of acts of intercourse between the accused and the prosecutrix prior to the specific act upon which the indictment was based is admissible. The theory of this exception is that the *mental disposition* of the accused at the time of the act charged is relevant; evidence that at some prior acts between the *same parties to* also relevant. This relates to evidence of prior acts between the *same parties to* show a disposition to commit the act charged, the probability being that the emotional predisposition or passion would continue. It has not been decided in the District of Columbia whether this exception to the general rule should include the same or similar offenses com-

mitted by the accused upon victims other than the one named in the indictment. This Court, in Bracey v. United States, supra, stated that logically the exception would seem to include such other offenses, although a decision upon this point was withheld awaiting a case properly briefed and argued. In Bracey, the Court stated [79 U.S.App.D.C. 23, 142 F.2d 88]:

"The emotional predisposition or passion involved in raping one little girl would seem to be the same as that involved in raping another. Evidence of such a crime committed upon one little girl shows a disposition to commit the same crime upon another, and the probability that the emotional predisposition or passion will continue is as great in one case as the other. The better reasoned cases in other jurisdictions also support the admission of such evidence, within the exception to the general rule."

We then held the questioned evidence in Bracey properly received, on the grounds, however, that the evidence tended to rebut an issue raised by the defense, i. e., that the complainant and witnesses were engaged in a conspiracy against Bracey, and also that it tended to explain a claim of bias.

In the present case, it seems to us that the story told by the witness Nelson did not cover a same or similar offense. At most, defendant might have been guilty of the offense of indecent exposure or, perhaps, assault by reason of pushing on the door; but it certainly is not evidence of a predisposition to commit the crime of rape, as no attempt whatever was made to molest the witness. This

2. The following appears from the record of the trial (Tr. p. 242):
"The Court: The whole theory of this is to show disposition, isn't that it?
"Mr. Flannery: The disposition, yes."
The jury was instructed as follows (Tr. p. 411):
"The jury is instructed that the testimony of the witness, Helen Nelson, is to be considered *solely* for the purpose of determining the defendant's disposi-

tion to commit the act charged." (Emphasis supplied.)

3. See Bracey v. United States, 79 U.S. App.D.C. 23, 142 F.2d 85, certiorari denied, 1944, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589. See also Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168.

4. 75 U.S.App.D.C. 332, 126 F.2d 849.

evidence raised a collateral issue which might easily have confused the jury;[5] and, in effect, it put in issue the defendant's character when he had not put it in issue.

In Lovely v. United States, 4 Cir., 1948, 169 F.2d 386, it was held error to admit testimony that the accused, who was on trial for rape, had committed rape on another woman several weeks prior to the crime alleged in the indictment. There the Court said:

"The fact, if it was a fact, that he had ravished another woman some weeks before, threw no light whatever on that question. It showed merely that he was a bad man, likely to commit that sort of crime; and this is precisely what the prosecution is not allowed to show in a criminal case." At page 388.

It was then held that to do otherwise would violate the rule that the character of a defendant on trial may not be attacked unless he puts it in issue, or unless such testimony is admitted for impeachment purposes where there has been a record of conviction. The Court pertinently pointed out that the fact that another woman testified that she had been raped by the accused, and that there were certain incidents in common with the rape for which the accused was on trial, had no more tendency to establish a plan or scheme within the meaning of the rule than a similar instance of a prior homicide or burglary would render evidence thereof admissible in a trial for either of those offenses.

■ Bearing in mind that in the present case the evidence objected to was introduced solely for the purpose of proving disposition, its admission cannot be justified on the ground that it might show intent. It was not introduced for that purpose. See note 2, supra.

A case even stronger than the present one is that of People v. Cordes, 1945, 391 Ill. 47, 62 N.E.2d 465. There the defendant was charged with the crime of assault with intent to commit rape. Prosecutrix was assaulted by a person alleged to have been the defendant, but who escaped when a passerby came to her assistance. The defense was an alibi; and it was also claimed that evidence of intent was meager. A witness (other than the prosecutrix) testified that shortly after midnight on the date of the assault charged in the indictment she was approached by a person, later identified by her as the defendant, who asked her if she wanted to have sexual intercourse, and she observed that his trousers were open in front and his private parts exposed. The Court held that her testimony was admissible in so far as it established the presence of the defendant at or near the place of the offense, but held that evidence of the vulgar remarks and indecent exposure was not admissible. The Court concluded:

"Where the crime charged is assault with intent to rape, it is for the jury to determine whether the assault was made with intent to have intercourse with the prosecutrix and to use force, if necessary, to compel her to submit. People v. Maher, 377 Ill. 488, 36 N.E.2d 735; People v. Anderson, 382 Ill. 316, 47 N.E.2d 718. The only evidence as to the intent with which the assault was made is the testimony of prosecutrix. It is meager and under such condition of the record, the jury was liable to attach improper significance to the testimony of Cecelia Cigan. Under such circumstances, it was error to admit it and its admission requires reversal and remandment for a new trial." 62 N.E. 2d at page 467.

In Michelson v. United States, note 3 supra, the following language is particularly appropriate:

"Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to es-

5. Defendant denied Nelson's story.

tablish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." Id. 335 U.S. at pages 475–476, 69 S.Ct. at page 218.[6]

█ That the admission of the evidence in the present case, if error, constituted grounds for reversal cannot be doubted. The trial judge, in response to defendant's counsel's statement that if the evidence was admitted improperly it could not be harmless error, stated: "No; if it is error it would be reversible. * * * "

Reversed.

PRETTYMAN, Circuit Judge (dissenting).

The witness Nelson testified emphatically and vividly that there was a struggle at her door upon the occasion in question. It was two o'clock in the morning. There was a knock on the door. She opened the door but left the chain lock on, and through the crack she recognized a neighbor. She got the matches he requested, removed the chain lock, and then fully saw his condition. To say the least his condition was immorally suggestive; as I read her description no obscene words were necessary to convey suggestion or intent. He tried to push the door open, and she tried to push it shut. She used the word "struggle" in that connection. She had an impression he put his foot in the door, because she could not get the door shut. She testified "I couldn't push that door in" and added the observation "and I am a big girl."

---

6. See also State v. Lapage, 57 N.H. 245, 289–290: "Proceeding, then, to consider what has been settled in this matter, I think we may state the law in the following propositions:

"1. It is not permitted to the prosecution to attack the character of the prisoner, unless he first puts that in issue by offering evidence of his good character.

"2. It is not permitted to show the defendant's bad character by showing particular acts.

"3. It is not permitted to show in the prisoner a tendency or disposition to commit the crime with which he is charged.

"4. It is not permitted to give in evidence other crimes of the prisoner, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than such as is expressed in the foregoing three propositions.

"It is a maxim of our law, that every man is presumed to be innocent until he is proved to be guilty. It is characteristic of the humanity of all the English speaking peoples, that you cannot blacken the character of a party who is on trial for an alleged crime. Prisoners ordinarily come before the court and the jury under manifest disadvantages. The very fact that a man is charged with a crime is sufficient to create in many minds a belief that he is guilty. It is quite inconsistent with that fairness of trial to which every man is entitled, that the jury should be prejudiced against him by any evidence except what relates to the issue; above all should it not be permitted to blacken his character, to show that he is worthless, to lighten the sense of responsibility which rests upon the jury, by showing that he is not worthy of painstaking and care * * ."

256

Fairbanks was convicted of assault with intent to commit rape. The foregoing evidence showed that within a few days (six) prior to the alleged assault Fairbanks at two o'clock in the morning attempted to force his way into a lady neighbor's apartment in a condition which clearly indicated his then intent, which was consistent with his alleged later intent. I think that evidence was clearly relevant to the issue of intent in the offense of assault with intent to commit rape. Moreover it was admissible under what Professor Wigmore calls "Design".[1] Thus there may be conduct which indicates the inward existence of a design or plan. "Emotional predisposition" is the term used by this court in somewhat the same connection in Bracey v. United States.[2] Design, as distinguished from knowledge or intent, is not an element of the criminal offense charged "but is the preceding mental condition which evidentially points forward to the doing of the act designed or planned".[3] It frequently consists of a series of acts having common features with the act charged and which tend to indicate that the accused person did commit the act charged.

I think the discussion by the court as to whether the disputed evidence revealed the same or a similar offense is beside the point. This evidence is not admissible to prove an evil disposition or the commission of similar offenses but is admissible to prove that over a course of time the accused had a design or plan in mind. The question is whether the prior acts are relevant to prove that the accused committed the offense charged. It seems to me that the evidence here in dispute is clearly admissible under these principles. That Fairbanks did in fact commit a rape, or that he committed an assault with intent to rape, is clearly indicated by evidence that within a week prior to the critical date he was going about the same apartment house, knocking at the doors of lady tenants and making requests which would cause them to open the doors, and that on one such occasion he tried to force his way into the apartment, being in a condition which was visible demonstration of his then purpose.

The testimony of the witness Krawczel was admissible under the foregoing principles. I think her testimony that someone who said he was Fairbanks knocked on her door the morning of the alleged rape and offered her some groceries and clothes (which was the same offer Fairbanks made to the complainant Bowles), and a second time rapped and asked for matches (which was the same request he made of both Bowles and Nelson), created a jury question whether this person was Fairbanks. I think this evidence was not so indefinite as to be inadmissible. Furthermore, if there was error in the admission of this evidence, it was harmless error.

I would affirm the conviction.

1. 2 Wigmore, Evidence §§ 237, 300, 304, 305 (3d ed. 1940).

2. 79 U.S.App.D.C. 23, 142 F.2d 85 (D.C. Cir.1944), certiorari denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944).

3. 2 Wigmore, Evidence § 300(3) (3d ed. 1940).