Charles H. KELLEY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16413.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 14, 1961.

Decided Dec. 22, 1961.

Mr. Gordon L. Poole, Washington, D. C. (appointed by this court) with whom Mr. William J. Garber, Washington, D. C., was on the brief, for appellant.

Mr. Robert Brewer Norris, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Nathan J. Paulson and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee. Mr. Charles T. Duncan, Principal Asst. U. S. Atty., also entered an appearance for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Charged with being a transferee of non-taxpaid marihuana, appellant was convicted after the District Court denied his motion to suppress. This appeal in forma pauperis was allowed that the court might consider whether or not there had been an unlawful seizure of the contraband from the person of the appellant.

Metropolitan police officers attached to the Vagrancy Squad on August 12, 1960, at about 1:50 A.M., from the street saw this appellant seated at a counter in a crowded Seventh Street restaurant. They entered the business establishment and approached the appellant. One officer displayed his badge. "I told him to come outside, as I recall the conversation, that I wanted to talk to him." The appellant obeyed. Outside, the officer asked the appellant his name, where he was employed and what he was doing in the area. He informed the appellant he had "seen him around in certain company." Appellant answered the questions put to him. The Judge asked an officer "Was he doing anything wrong when you went in there?" The witness answered: "That is what I went in there to try to determine." [1] Another police witness,

1. D.C.Code § 22–3302 (1961) defines as "vagrants" persons who fall into any one of several categories, but particularly pertinent here is the following:

"Any person known to be a pickpocket, thief, burglar, confidence operator, or felon, either by his own confession or by his having been convicted in the District of Columbia or elsewhere of any one of such offenses or of any felony, and having no lawful employment and having no lawful means of support realized from a lawful occupation or source, and *not giving a good account of himself* when found loitering around in any park, highway, public building, or other public place, store, shop, or reservation, or at any public gathering or assembly." (Emphasis added.)

asked whether he had observed the appellant "doing anything wrong or committing any breach of the peace at the time that you first saw him," replied "No, sir." At that time, seated on the next stool at the counter was a woman said to have been known to the officers as a prostitute, but there was no evidence that appellant was aware of that fact.

If the officers after bringing the appellant outside, had reached into appellant's pockets, one by one, and extracted the contents, we suppose none would deny the unlawfulness of the search. In White v. United States,[2] we specifically held unlawful such a search. Here the officers said they recognized appellant as a previously convicted felon. If so, his submissive attitude toward the officers when the police exercised such dominion over him could be expected to differ markedly from that of a visiting businessman, with no record, who might be "told" to step outside.[3] Instead of their searching the appellant, the officers demanded that he reveal what items he had on his person, their actions culminating in the command that he pull out the marihuana cigarettes. Their own testimony disclosed the course taken, as may be noted.

Outside the restaurant the officers asked the appellant what he had in his right pocket, and appellant replied that he had some change, some bills, and in the other pocket he had some change and cigarettes. The officer asked him what was in his rear pocket, and he said "I have got a wallet and handkerchief in there." The officer next asked "What is that bulging out of your change pocket?," whereupon the appellant said: "I have some marijuana cigarettes." The officer then commanded "Pull it out," and appellant pulled out a cellophane package with "Chesterfield" on the label and handed it to one of the officers. Thereupon, the officers testified, appellant was "placed under arrest and then he was searched." Appellant was not charged with vagrancy. He was booked and later indicted as a transferee of non-taxpaid marihuana.

The only question in the case is whether or not the marihuana, so seized, was properly received in evidence against the appellant. If the appellant had unlawfully been arrested, the evidence was improperly received. We pointed out in Williams v. United States,[4] that where evidence had been seized as the result of an illegal arrest, a motion for the suppression of the evidence should have been granted. There we noted that the "arrest of appellant was illegal because without a warrant, without probable cause, and without other validating circumstances. The government does not seriously contend otherwise." We denied the Government's petition for rehearing *en banc*.

Here there was no suggestion that this appellant had violated the vagrancy statute. We may assume that the police under the narrow circumstances spelled out in the Code may question a person when "found loitering" to ascertain whether or not he falls into one or more of the defined categories. Had this appellant been a "person" who was found "loitering," he would have been under the duty of "giving a good account of himself." But there was no evidence that he was "loitering" or doing anything but what he had a right to do. Moreover, we have held that there is a definite limitation upon the effect to be

---

2. 106 U.S.App.D.C. 246, 271 F.2d 829 (1959). There a New York policeman arrested the accused for "vagrancy" and conducted a physical search of White's person. Compare United States v. Bonanno, 180 F.Supp. 71, 77, 78 (S.D.N.Y. 1960) with United States v. Bufalino, 285 F.2d 408, 420 (2 Cir. 1960) and see note 3 in the concurring opinion at 420.

3. "It is the right of one placed under arrest to submit to custody* * *. Probable cause cannot be found from submissiveness* * *." United States v. Di Re, 332 U.S. 581, 594, 595, 68 S. Ct. 222, 228, 92 L.Ed. 210 (1948).

4. 99 U.S.App.D.C. 161, 237 F.2d 789 (1956).

**312**

given to the words "not giving a good account of himself." [5]

We recently had occasion to explore carefully the question of when an arrest is said to have occurred.[6] We there found no error in an instruction which read:

"You are instructed that in order for there to be an arrest it is not necessary that there be an application of actual force, or manual touching of the body, or physical restraint which may be visible to the eye, or a formal declaration of arrest. *It is sufficient if the person arrested understands that he is in the power of the one arresting, and submits in consequence.*" (Italics in the original.) [7]

It is argued that the appellant was a known felon, although, concededly, he was not an escapee or on parole. That the appellant was restrained of his liberty and so understood can hardly be doubted as he left the restaurant with one officer leading the way and the other either alongside or behind the appellant. As the Supreme Court said in Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 1437, 4 L.Ed.2d 1688 (1960), "The validity of the search thus turns upon the narrow question of when the arrest occurred * * *."

■ Whether or not the police deemed the appellant under arrest when he was accosted at the counter, he would have been rash indeed to suppose he was not under arrest by the time he got outside the business establishment.[8] The requirement that the appellant systematically disclose the contents of his clothing, first one pocket, then another, and then another, was no less a search without the slightest evidence of probable cause than if the police had themselves reached into the appellant's pockets. And

finally, as their testimony shows, the appellant was ordered to "Pull it out," whereupon the package was produced. Thus was the evidence secured upon which the indictment here was predicated. The appellant's motion to suppress should have been granted.

Reversed.

---

5. Beail v. District of Columbia, 91 U.S. App.D.C. 110, 111, 201 F.2d 176, 177, rehearing en banc denied (1952).

6. Coleman v. United States, 111 U.S.App. D.C. ——, 295 F.2d 555, decided en banc September 8, 1961.

7. Id., 295 F.2d p. 563 and see United States v. Di Re, supra note 3.

8. United States v. Di Re, supra note 3.