Alvin O. **FREEMAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 17517.

United States Court of Appeals
District of Columbia Circuit.

Argued June 27, 1963.

Decided July 25, 1963.

Mr. J. Joseph Barse, Washington, D. C. (appointed by this court) for appellant.

Mr. William H. Willcox, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. Barry Sidman, Asst. U. S. Atty., also entered an appearance for appellee.

Before DANAHER, BASTIAN and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant after a jury trial was convicted of violations of the narcotics laws, 21 U.S.C. § 174, 26 U.S.C. § 4704(a). His appeal challenges (1) the denial of his pretrial motion to suppress, and (2) during trial, in the presence of the jury, a ruling by the trial judge that the Government must produce evidence that the officer had previously arrested the appellant for violation of the Harrison Act.

As to the first point, the judge ruled that the seized narcotics might be received in evidence for the arrest was clearly legal. "There was no compulsion of any kind on the defendant, or coerciveness against the defendant of any nature, compelling him to disclose the capsules. So it is just that clear to me."

As to the second point, despite timely objection, the judge in the presence of the jury, required the prosecutor to bring out that the arresting officer had previously arrested the appellant for a narcotics violation, and that he had ascertained that the appellant was a narcotics addict. Recognizing the prejudice so created, the Government here moved to remand.[1] We think the Government's position is commendable. The appellant

---

1. The appellant objected to remand without consideration by this court of his

first point on appeal. He argued that if we should accept his view with refer-

did not take the stand, and the questioned evidence thus did not come out in the course of cross examination for impeachment purposes. Nor did it come within any of the recognized exceptions to the exclusionary rule. It should not have been received.[2]

■ Turning back to the hearing on the motion to suppress, the record shows that two officers assigned to the narcotics squad of the Metropolitan Police were cruising in furtherance of their duties under the narcotics vagrancy statute.[3] About 9:15 P.M. on August 28, 1961 they arrived in a certain area in the District of Columbia most commonly frequented by narcotics peddlers and narcotics users. There they recognized the appellant in the company of one Oddie, also known to the officers as a narcotics user. One of the officers in 1958 had arrested this appellant for violation of the Harrison Narcotic Act. He was known to the police as an addict.

D.C.Code § 33–416a (1961) has outlined a District of Columbia policy with respect to "Vagrancy—Narcotic drug user—Penalties—Conditions imposed." Subsection (a) provides:

"The purpose of this section is to protect the public health, welfare, and safety of the people of the District of Columbia by providing safeguards for the people against harmful contact with narcotic drug users who are vagrants within the meaning of this section and to establish, in addition to the Hospital Treatment for Drug Addicts Act for the District of Columbia, further procedures and means for the care and rehabilitation of such narcotic drug users."

Subsection (b) (1) defines the term "vagrant" to mean "any person who is a narcotic drug user or who has been convicted of a narcotic offense in the District of Columbia or elsewhere and who —" when found mingling with others in public, fails to give a good account of himself, or who falls into any one of several defined categories, or who is included in one of the classes of persons defined in paragraphs (1) through (9), inclusive, of section 22–3302.[4]

Within the prescription of the narcotics vagrancy sections, either Oddie or the appellant might have been found upon inquiry to be liable to arrest by a law enforcement officer who "has probable cause to believe that any person is a vagrant within the meaning of this section * * *."[5]

In the course of such an investigation, the officers upon sighting Oddie and the appellant stopped their car. One officer approached Oddie and engaged him in conversation. The appellant approached the arresting officer who observed the appellant place his right hand "alongside his body and move it a little bit to the rear." The arresting officer as he testified, then "asked him what he had in his hand. At that time he picked his hand up and opened it, and I observed a cellophane cigarette pack cover in his hand, with a quantity of capsules." From testimony on cross examination and that elicited by the judge, it developed that such capsules as the officer saw, containing a white powder, when possessed by a narcotics addict, usually were found to contain heroin. The officer thereupon advised the appellant that he was under arrest and asked if he had "any more narcotics on him. And he said yes, and he reached into his righthand pants pocket and he pulled out another cellophane cigarette pack cover, and this one had three capsules of a white powder in it,"

---

ence to the allegedly illegal arrest, the appellant would be entitled to his freedom and not merely to a retrial. We denied the motion to remand, preferring to hear the whole case.

2. Harper v. United States, 99 U.S.App.D. C. 324, 239 F.2d 945 (1956); Fairbanks v. United States, 96 U.S.App.D.C. 345,

226 F.2d 251 (1955); Hatchet v. United States, 54 App.D.C. 43, 293 F. 1010 (1923).

3. D.C.Code § 33–416 (1961).

4. One of the classes of persons defined in paragraph (1), for example, is a felon.

5. D.C.Code § 33–416a(c) (1961)

identical to the other capsules, first observed.

The defendant did not take the stand.[6] We have only the testimony upon which the trial judge relied for his conclusion that clearly there was no arrest prior to the question, "What have you got in your hand?" followed by the disclosure, as described. The judge ruled that there was probable cause for the arrest and that the motion to suppress must be denied.

It has repeatedly been held that the test of probable cause lies in what reasonably appeared to be the facts as viewed through the eyes of an experienced officer at the time.[7]

Appellant argues that we are bound to reverse the conclusion reached by the trial judge on the authority of Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961).[8] There however, we were bound to find that there was "no suggestion" of a violation of the narcotics vagrancy statute. The police had commanded Kelley to follow them from a grill, and thereafter systematically to disclose the contents of his clothing, "first one pocket, then another, and then another." We concluded that there was a "search without the slightest evidence of probable cause." The situation is clearly distinguishable from that disclosed by the record before us.

We will not say that the District Judge erred on this aspect of the case.

Reversed and remanded for a new trial.

BURGER, Circuit Judge, (concurring).

I concur fully in Judge DANAHER'S opinion. I think the record affords abundant support for the District Court's action in denying the motion to suppress the narcotics seized from appellant. Independent of all other factors there was a valid arrest here and it is important that we pinpoint the precise time when the arrest occurred.

Appellant challenges the authority of the police officer to ask him what he was holding in his hand, and claims therefore that revealing the narcotics cannot be regarded as probable cause for arrest on a possession charge. This is not so. Here there was no indiscriminate "dragnet" process. On the contrary, the officer was a member of the narcotics squad; the area of the arrest was 14th and U Streets, N. W., shown by this record to be a place known to police as an area of narcotics activity; the arresting officer had previously arrested appellant for violation of the Harrison Narcotics Act and knew him as a drug user and one frequently in the company of addicts; the officer also knew appellant's companion to be a narcotics user. It is the totality of these circumstances as viewed through the experienced eye which justified the officer in making the inquiry which he made, and appellant's voluntary action in responding and revealing the illegal possession gave abundant probable cause for arrest. At that moment the officer could observe the commission of a felony and he was bound to act.

6. No doubt counsel was not unmindful that on cross examination the appellant's record might have a tendency to discredit him. It would have become apparent that he had been convicted: in 1954, twice for disorderly behavior; in 1956, of violation of the uniform narcotics law; in 1957, of disorderly conduct and soliciting prostitution; in 1958, of larceny and violation of the Harrison Act; in 1961, of petty larceny.

7. See, e.g., Bell v. United States, 102 U.S. App.D.C. 383, 386–387, 254 F.2d 82, 86, 87 (1958); Ellison v. United States, 93 U.S.App.D.C. 1, 3, 206 F.2d 476, 478

(1953); cf. Draper v. United States, 358 U.S. 307, 313, 323, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959), and the comment of Mr. Justice Douglas in the dissent, at 323 of 358, U.S., at 338 of 79 S.Ct.: "It could be inferences from suspicious acts, e.g., consort with known peddlers, the surreptitious passing of a package, an intercepted message suggesting criminal activities, or any number of such events coming to the knowledge of the officer."

8. Cf. Green v. United States, 104 U.S.App. D.C. 23, 24, 259 F.2d 180, 181 (1958), cert. denied, 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578 (1959).