**Melvin L. BROWN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19160.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 5, 1965.

Decided July 26, 1966.

Petition for Rehearing En Banc Denied Sept. 21, 1966.

Mr. Kevin P. Charles, Washington, D. C. (appointed by this court), for appellant.

Miss Carol Garfiel, Asst. U. S. Atty., with whom Messrs. John C. Conliff, Jr., U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and BURGER and LEVENTHAL, Circuit Judges.

BURGER, Circuit Judge:

This appeal challenges the admissibility in evidence of items seized from a car Appellant was driving when arrested. His motion to suppress the evidence having been denied, Appellant was convicted of robbery and sentenced to imprisonment for from three to ten years. This appeal followed.

At about 4:20 on the morning of Monday, September 21, 1964, the Howard Johnson Motor Lodge at 2601 Virginia Ave., N.W., was robbed. At about 4:30 two police officers, having seen an old maroon Ford automobile being driven with its tag light out,[1] pulled up behind it at Logan Circle when it was stopped for a traffic light.

The police testified that one of them left the squad car and questioned Appellant about the tag light and an expired inspection sticker he observed on approaching the car. The other, remaining in the squad car, heard a report on the radio that there had been an armed hold-up at the Howard Johnson Motor Lodge and that there was a lookout for a heavily built Negro male driving a maroon 1954 Ford. Believing Appellant to be the suspect, the second officer left the squad car to warn his partner, who then went to the squad car to learn more details of the radio broadcast description. Satisfied that Appellant was the person described in the "lookout," he returned to the Appellant's car, asked Ap-

---

1. This is a violation of Section 120(c), Part I, of the D.C. Traffic and Motor Vehicle Regulations.

pellant some questions and searched the car.

The police testified that Appellant was told he was under arrest when the traffic offenses were discovered and that they intended to take him to the police station on the traffic violations. They further testified that after learning of the robbery, they charged him with that offense and only then conducted the search of the car. There are indications in other parts of their testimony that the search may have come after learning of the robbery but before *telling* Appellant he was charged with it. Although testifying the word "arrest" had not been used by the officers, Appellant's testimony indicated he believed he was under arrest for robbery before the search. Thus the testimony of the police and Appellant is in agreement that the police did not search the car until they learned of the robbery.

The search yielded $178, found under the front seat on the passenger's side, and a paper bag rolled into a cylinder and a towel, which were found on the floorboard. The government's case showed that the money was what had been stolen from the Howard Johnson and that the cylinder had been held under the towel to simulate a concealed weapon.

The questions presented on these facts are whether the police had probable cause for arresting Appellant on the robbery charge, whether they did in fact arrest him, and whether the search was therefore permissible as one incident to arrest.

The first officer who heard the "lookout" over the radio acted on the part that said a Negro male of heavy build [2] in a maroon 1954 Ford had just robbed the Howard Johnson on Virginia Ave.[3] This information was sufficiently particular to lead the officers directly to the

suspect. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The total number of 1954 Fords meeting that description being driven in 1964 was limited; still smaller was the total number being driven at 4:30 on a Monday morning, and yet smaller those driven in that immediate neighborhood at that time by heavy Negro males. Ordinary human experience alone, without resort to the precise factors of the law of probability, tells us this.

When one of the officers radioed back for more details of the person being sought for the robbery, he was told that the suspect was reported to be five feet, five inches, wearing a brown jacket and a cream-colored straw hat. Appellant was wearing blue and had only a felt hat in the car. He testified he was five feet eleven inches. The officer told the dispatcher that the man they had was wearing different clothes but fitted the general description; the dispatcher then repeated the "lookout" for the benefit of other cruisers. These discrepancies, which can be the result of the victim's excitement or poor visibility or of the suspect's changing clothes, did not destroy the ascertainment made on the basis of the accurate portion of the identification, which was by itself enough to constitute probable cause, that Appellant was the one sought.

The information received by the police was that the suspect was driving a 1954 maroon Ford; it turned out at trial that it was a 1952 car. One of the arresting officers testified that he thought Appellant was driving a 1952 or 1953 or 1954 Ford and that these model years were all pretty much identical to him. What they properly looked for—and found— was an "old" maroon Ford car. Appellant and his car thus reasonably matched the description received.

2. Appellant variously described himself as being 194 pounds and 183 pounds at the time of arrest; he said he weighed 215 pounds when he was being tried.

3. Logan Circle is about 20 blocks from the scene of the robbery. Before the police stopped Appellant, they had followed him for several blocks travelling in a direction leading away from the location of the Howard Johnson.

█ That the information came from an unknown victim of the crime did not preclude the policeman's having probable cause to arrest Appellant on the basis of it. Although the police could not here judge the reliability of the information on the basis of past experience with the informant, compare Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959), the victim's report has the virtue of being based on personal observation, a factor stressed in Aguilar v. United States, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and is less likely to be colored by self-interest than is that of an informant. Admittedly a crime victim's observation may be faulty in some respects, as it may have been here; however, the mistakes are irrelevant if there is sufficient particularized information to constitute probable cause. Except in those few cases where cameras are part of a burglar alarm system, most reports are likely to be less than perfect.

██ The next question is whether, with this information, the police did in fact arrest Appellant on the robbery charge. There is no dispute that from the time the police stopped Appellant because of the traffic violations he was not free to go, that the police intended to take him to the police station, and that Appellant felt he was being detained.

This was plainly an arrest.[4] Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961); Coleman v. United States, 111 U.S.App.D.C. 210, 295 F.2d 555 (1961), cert. denied, 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613 (1962).

█ When the police continued their detention of Appellant on the scene after having probable cause to believe he was the wanted robber described over the police radio, the arrest also became one for robbery. Whether or not a specific statement of that fact was made to Appellant is irrelevant. Coleman v. United States, *supra.*

██ Once it is established that Appellant was properly arrested on a robbery charge, there is no doubt as to the validity of the search of the person and the car incidental to the arrest and not remote in time and place. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).[5]

Affirmed.

4. While saying that the conduct in this case, where the police had seen him commit the traffic violations and where they planned to take him to the precinct station, constituted an arrest, we do not say that mere detention would give rise to an arrest in all circumstances. The police may, of course, question a citizen even though such questioning may involve a momentary "detaining." Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Green v. United States, 104 U.S.App.D.C. 23, 259 F.2d 180 (1958), cert. denied, 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578 (1959); United States v. McKethan, 247 F.Supp. 324 (D.D.C.1965), aff'd, No. 20,059, D.C. Cir., Oct. 6, 1966. This form of questioning is not "custodial interrogation" within Miranda v. State of Arizona, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966).

5. The facts in Hargrove v. United States, No. 19,614, D.C.Cir., May 20, 1966,

illustrate that there may be cases where the initial arrest without a warrant is for a traffic violation only, yet additional factors are of such a character as to indicate the need and validity of a search of an arrested driver and his car, provided the search is not remote in time or place from the arrest. In *Hargrove* an officer witnessed traffic violations at 9:40 a. m. In the course of questioning the driver, he observed the driver conceal what appeared to be a pistol under a car seat. Feigning unawareness, he directed the driver to accompany him to the nearby police station (a five-minute drive), but advised the passengers they were free to depart; one passenger left at once and another ran off when the car reached the police station. Upon reaching the station the officer searched and found a pistol in the car. He then searched the trunk of the car and discovered a sawed-off shotgun. The two remaining passengers were found to carry pistols.