**UNITED STATES of America**
v.
**Howard D. S. WASHINGTON.**
Crim. No. 995–66.

United States District Court
District of Columbia.
Jan. 7, 1967.

Seymour Glanzer, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Bruce Beaudin, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

This cause came on for hearing on defendant's motion to suppress. From the testimony of the police officer who made the arrest, it appears that on the day in question he was on duty in the vicinity of Wiltberger and "T" Streets, which is a known rendezvous for narcotic users and pushers. He was on duty with his partner and both were dressed in old work clothes. He was then assigned to the Police Tactical Squad. Prior to this occasion, he knew the defendant as a narcotic user and pusher. He knew the defendant had a prior record for narcotic violations. He observed the defendant moving around in the area, going from group to group, during the course of which he had certain conversations with persons in the group. On one occasion he observed the defendant talking to one

Philip Wesley White, whom he recognized as a known narcotic user.

The officer sought to approach the defendant to talk to him, but the defendant walked quickly in the opposite direction and observing the officer's conduct, started to run. The officer and his partner ran after him. In a nearby crosswalk, defendant discarded a small brown envelope which the officer picked up. The other officer continued pursuit. Upon picking up the small brown envelope, the officer observed that it contained capsules and that some powder had spilled out of the envelope. These capsules and powder the officer recognized as looking like a narcotic substance. He yelled to his partner, "This is the stuff." A short time thereafter the partner continued the chase and arrested the defendant.

The defendant took the stand in his own behalf to offer testimony on the circumstances of the arrest. He admitted prior narcotics convictions and said he had not worked five or six months prior to the arrest. He stated that he recognized the officer during the time he was talking to several men in the area in question. He stated that he was aware that the officer was watching him and that he sought to leave the area and ran when he saw the officer was coming in his direction. He admitted dropping the envelope in question prior to the time he was overtaken by the second officer.

Defense counsel takes the position that the officers placed defendant under arrest at a time when they had nothing but suspicion that he had violated the law. Counsel relies upon the *Perry* case.[1] In *Perry*, police observed the defendant at 14th and "U" Streets talking to several people, some of whom were known addicts. Twice the officer observed the exchange of something with a known addict. The police thereupon arrested Perry. On the way to the police station, the defendant was observed to drop a glassine envelope which was subsequently found to contain narcotics.

Counsel for the defendant in the instant case also relies on the *Kelley* case.[2] There, the Court concluded that when a police officer walked up to an individual standing at the counter in a restaurant, displayed his badge, and asked him to come outside because he wanted to talk to him for a moment that these words in the context of that case constituted an arrest. Counsel's theory is that when the police officer started to move in the direction of a known narcotic user, that this action constituted arrest since this defendant is knowledgeable concerning narcotics.

The Court feels that both *Kelley* and *Perry* are distinguishable on their facts. Here, no words were spoken. The arrest had not been effected at the time defendant started to flee. The element of submission to arrest is clearly lacking.[3] The most that can be said for the situation with which we are confronted in this motion is that the defendant was apprehensive that he was about to be arrested and sought to escape through flight. At the time arrest was actually effected, the police were entitled to rely upon the totality of the information then in their possession. This included the following circumstances: They recognized defendant as a known narcotic user who had on prior occasions been convicted of narcotic law violations. They saw him in conversation with a known user in an area usually frequented by such people. Observing the police watching him and moving in his direction, the defendant sought to flee. During the course of flight, he admits dropping the small envelope which contained the narcotics now sought to be suppressed. One of the officers picked up the package which contained capsules from some of which a white powder had spilled out, which they recognized as having the appearance of

---

1. Perry v. United States, 118 U.S.App.D.C. 360, 336 F.2d 748 (1964).

2. Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961).

3. See Coleman v. United States, 111 U.S. App.D.C. 210, 218, 295 F.2d 555 (1961).

the drug in question. It was after these factors were all known to the arresting officers that the arrest was consummated.

Under these circumstances, since the officer's testimony is found credible by the Court, the Court concludes that the arrest is valid and the motion to suppress will be denied.[4]

---

4. See Redmon v. United States, 355 F.2d 407 (9th Cir. 1966). See also Freeman v. United States, 116 U.S.App.D.C. 213, 214, 322 F.2d 426 (1963).