Albert D. DORSEY, Appellant,

v.

UNITED STATES of America, Appellee.

Paul T. WRIGHT, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 20114, 20130.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 19, 1966.

Decided Jan. 19, 1967.

Petitions for Rehearing En Banc Denied March 2, 1967.

Petition for Rehearing before the Division in No. 20,130 Denied March 2, 1967.

Mr. Charles S. Vizzini, Washington, D. C. (appointed by this court), for appellant in No. 20,114.

Mr. S. White Rhyne, Jr., Washington, D. C. (appointed by this court), for appellant in No. 20,130.

Mr. Theodore Wieseman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. Charles A. Mays, Asst. U. S. Atty., also entered an appearance for appellee in No. 20,130.

Before FAHY, McGOWAN and LEVENTHAL, Circuit Judges.

McGOWAN, Circuit Judge:

The appellants in these two cases were tried together under an indictment charging violations of two federal narcotics statutes. 26 U.S.C. § 4704(a) (1964); 21 U.S.C. § 174 (1964). Both were convicted as charged; and these separate appeals pose essentially the same issues. The principal one has to do with the admissibility into evidence of narcotics which, so it is said, were obtained by means of improper police action. A second claim is that reversal is necessitated by an alleged procedural lapse which resulted in the jury's hearing that one of the appellants had a narcotics conviction record. Our conclusion is that neither warrants reversal.

I

Two District of Columbia narcotics squad officers were, at approximately 11:00 P.M. on July 12, 1965, driving south on Fourteenth Street, Northwest, in the block between U and T Streets.[1] They saw appellants seated in the front seat of a car parked along the curb. Two other men were in the back seat. Appellants were recognized by the officers as persons they had known for some time to be associated with narcotics violations. The police car stopped, and Officer Moore walked up to the car on the driver's side. Appellant Wright was behind the wheel, appellant Dorsey was on the passenger side, and, so Officer Moore testified, they were facing each other with their heads down as though looking at something on the seat. Officer Moore then directed his flashlight into the car, and, by its illumination, saw a cellophane bag in Dorsey's hand filled with white-powdered gelatine capsules. Moore shouted this news to Detective Somerville who was now approaching the car on the passenger side. Dorsey opened the glove

---

1. The testimony was that the narcotics squad constantly receives complaints about narcotics peddling in this precise area. This is a circumstance of which this court has heretofore taken explicit notice. Freeman v. United States, 116 U.S.App.D.C. 213, 214, 322 F.2d 426, 427 (1963).

compartment and placed the bag on the ledge. Somerville reached through the open window, seized the bag, and placed Dorsey under arrest. Twenty-seven heroin capsules were in the bag.

Appellant Wright then complained about Moore's flashing the light inside the car. While they were conversing, Moore noticed that Wright was dropping capsules on the floor of the car. He then arrested Wright, and, after removing him from the car, picked up nine heroin capsules from the floor.

The foregoing version of how the narcotics were found reflects the police evidence at a pre-trial hearing on a motion to suppress. At that hearing appellants' effort was to show that Officer Moore, when he first approached the car, asked Wright to exhibit his driver's permit and auto registration. What happened after that is not essentially disputed.

■ Detective Somerville testified at the pre-trial hearing, but Officer Moore did not then testify in person because he was in the hospital with a broken neck. A written statement by him as to the circumstances of the arrests was submitted to the court. In it he said that, after observing Wright dropping the capsules: "I opened the door, removed Wright from the car and picked up the capsules. After advising Wright that he was under arrest, I asked him if he had his driver's license and registration. After saying he did, he showed them to me." This is compatible with Somerville's recollection that Officer Moore's request for the automobile papers had taken place "just before they were getting in the wagon." [2]

■ The Government argues that there can be no question of an illegal search since there was no search at all. See, e. g., Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927). Appellant Wright at least has pressed upon us the invalidity of the search because of the assertedly illegal means by which it was made, that is to say, the projection of a flashlight beam into the constitutionally protected interior of the car. See Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). We are not conscious of any necessity of having to choose between these sharply contrasting alternatives. The essential inquiry, as is customarily the case in Fourth Amendment claims, is the reasonableness of the police conduct under the circumstances. United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Carroll v. United States, 267 U.S. 132, 147, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Reasonableness involves consideration of the nature of the police conduct as well as the occasion of its exercise. We think the evidence supported a view of that conduct as not transgressing the constitutional standard.

■ It is undisputed that the police officers knew of the narcotics records of appellants. When the officers suddenly saw them situated as they were at the time and place in question, the former were entitled to extend their preventative patrolling mission to the extent of approaching the car and observing what

2. At a preliminary hearing before a magistrate, Moore had said that "I could have possibly asked him before I actually saw the capsules fall, for his driver's license or registration." That account of his conversation with Wright did not otherwise go beyond reporting that Wright had complained of Moore's action in directing the beam of the flashlight into the car. At the pre-trial hearing on the motion to suppress, Somerville, as indicated, supported the assertion in Wright's written statement that this request for the license and permit came after the arrest. Wright, Dorsey, and a third man who was in the car, all testified that Moore first asked to see the papers. It is urged, especially by Dorsey, that we should, at the least, order a remand for a further evidentiary inquiry into the question of what Moore said when he first approached the car. But this inquiry was exactly what counsel for Wright was pursuing when Moore was on the witness stand under oath at the trial. He got a clear answer, which he was free to impeach. We see no purpose to be served by a remand to go over the same ground.

was going on inside. Both appellants conceded before us that this could properly have been done in the daytime. We do not think the need to employ a visual aid at night in the form of a flashlight converts this from lawful into unlawful conduct. A car parked at 14th and U Streets at 11 o'clock at night, occupied by known narcotics offenders, bears little resemblance to a home or dwelling.[3] If policemen are to serve any purpose of detecting and preventing crime by being out on the streets at all, they must be able to take a closer look at challenging situations as they encounter them. All we hold here is that this was one of those situations, and that the police response to it was a justifiable one which did not project their law-enforcement responsibilities beyond permissible constitutional limits.

## II

In the statement submitted by Officer Moore at the pretrial hearing of the motion to suppress, Moore said that he had said to Wright, in response to Wright's question as to what right Moore had to shine his light into the car: "You are a known user of narcotic drugs and you are in company of a known convicted narcotics drug violater." At the

trial and in the presence of the jury, this came out as "You are convicted of a narcotic offense and you use narcotics. * * *." It is now urged that this revelation to the jury of Wright's prior record requires reversal of his conviction; and Dorsey argues that the direct prejudice to Wright indirectly permeates his conviction as well.

We are not persuaded that either appellant is entitled to relief on this account. The trial record shows that Moore's offending answer was forthcoming not at the Government's instance but in response to pressing and persistent cross-examination by Wright's counsel. The transcript indicates that counsel persevered in the face of two clear warnings by the court that the answer would be dangerous. Appellant Wright now argues that his counsel could not know that Moore would answer as he did because the pre-hearing statement referred only to narcotics usage by Wright and not prior conviction, the latter reference in the statement being to Dorsey. But the court obviously knew of the danger, and it is hard to believe that counsel did not also.[4] In any event, the transcript reflects a persistent disregard of the judicial cautions which does not impel us to hold that the court committed re-

3. Compare United States v. Lee, 274 U.S. 559, 560, 47 S.Ct. 746, 747, 71 L.Ed. 1202 (1927), where a Coast Guard patrol boat discovered a motor boat alongside a schooner "in a region commonly spoken of as Rum Row."

4. In chambers, on the day set for trial but before the jury was impanelled, trial counsel for Wright requested a further opportunity to explore the sequence of events surrounding the officers' approaching the car and seizing the narcotics. This request was denied, but counsel did not think it important to enunciate for the record the precise reasons for his request and the grounds of the trial judge's refusal. It is now argued that this request should have been granted because trial counsel was not accorded an opportunity fully to develop his case at the suppression hearing because of the hospitalization of Officer Moore; and, further, that the judge presiding at the prior hearing contemplated additional proceedings by the use of the phrase "without prejudice" in his order denying suppression. We would ordinarily be slow to reverse a trial court on the basis of speculation as to what was said in the course of a colloquy in the judge's chambers. In any event, where we hold that the conduct of the police in approaching the car was reasonable under the circumstances, whether Officer Moore asked for the driver's permit and registration of appellant Wright before or after he actually saw the suspected narcotics does not have the significance it might have had if the approach itself was lacking in independent justification. And, although the use of the phrase "without prejudice" in this context seems to us undesirably ambiguous in view of the purposes of Rule 41(e), FED. R.CRIM.P., there is nothing about its use in this case to suggest that the hearing judge did not intend t. eny the motion to suppress on its m .rits.

versible error in finally permitting the witness to answer a question which counsel, in the face of the court's warnings, was intent upon pursuing.

Dorsey stands in no better case. His counsel made no objection of any kind on the record, nor any apparent effort to divert Wright's counsel from eliciting an answer which, even if it followed Moore's pre-trial statement exactly, could only have disclosed Dorsey's own prior record.

The convictions appealed from are

Affirmed.