Howard Donald S. WASHINGTON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21105.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 12, 1968.

Decided May 20, 1968.

Mr. George C. Davis, Washington, D. C., with whom Mr. John D. Conner, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. James A. Strazzella, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Seymour Glanzer, Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER, BURGER and LEVENTHAL, Circuit Judges.

## DANAHER, Circuit Judge:

Convicted of violations of the narcotics laws, this appellant contends that the District Court erred in denying his motion to suppress the use in evidence against him of some 15 capsules containing heroin. He argues that when he discarded an envelope containing the heroin capsules, he acted in apprehension of an impending arrest for which, at least up to that moment, the police lacked probable cause.

Before the District Court was evidence that on July 11, 1966 about 3:30 P.M., two police officers, specially trained and experienced in investigations of narcotics violators, were dressed in old clothes. While on investigative duty, they observed the appellant who was known to them as a narcotics addict mingling with and talking to yet other known narcotics users in an area much frequented by such people. While maintaining such surveillance, one of the officers saw the appellant receive money from and pass something to one of the group whereupon the officers approached.

The appellant commenced to walk away. The officers walked after him. He then began to hasten his steps and so did the officers. As he crossed the street at a run, he discarded an envelope from which a few capsules were then spilled onto the street. One officer picked up the capsules, identified them as of the type usually found in the possession of narcotics violators and called to the other officer "Stop him— I've got the stuff," or words to that effect. The appellant was then placed under arrest, as the District Judge found.

In Dorsey v. United States[1] it was contended that there had been an illegal search where narcotics had been seized by two narcotics squad officers who were engaged in a similar preventative patrolling mission. We observed:

> "If policemen are to serve any purpose of detecting and preventing crime by being out on the streets at all, they must be able to take a closer look at challenging situations as they encounter them. All we hold here is that this was one of those situations, and that the police response to it was a justifiable one which did not project their law-enforcement responsibilities beyond permissible constitutional limits."[2]

Earlier in Green v. United States,[3] we remarked that officers in the course of an investigation may ask questions before making an arrest. Under the circumstances there disclosed, we concluded that the narcotics officers were entitled to ask a known addict if he were still using narcotics and, if so, to make an effort to induce him to inform them as to the sources of his supply. One of two men under observation responded to the police call but the other took flight. His precipitous action, we observed, consti-

1. 125 U.S.App.D.C. 355, 372 F.2d 928 (1967).

2. Id. at 358, 372 F.2d at 931.

3. 104 U.S.App.D.C. 23, 259 F.2d 180 (1958), cert. denied, 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578 (1959).

tuted one more circumstance to be taken into account by the officer who followed him. It was then concluded that, all circumstances considered, the trained, experienced narcotics officers acted reasonably as they moved toward the appellant. We observed:

> "He could have declined to talk. He could have refused to halt. The officers certainly would have had no right whatever, then and there without more, either to seize him or to search him." [4]

This appellant would have us say that he was unlawfully compelled to give evidence against himself when he discarded the contraband for he knew that he possessed the heroin and feared that it would be discovered if he were placed under arrest.[5]

There had been no arrest. There had been no search. Washington himself threw down the envelope containing the narcotics. After the evidence had thus come to light, the District Court assuredly was free to reach a conclusion of reasonableness respecting the conduct of the officers. The ensuing arrest was not unlawful.

We find no error.[6]

Affirmed.

LEVENTHAL, Circuit Judge (concurring):

I concur in the result because I think that the officer had probable cause for an arrest when he saw appellant, whom he knew to be a narcotics addict, talking to other known narcotics users, in an area known to be frequented by narcotics users, and saw appellant receive money from and pass something to one of the group.

I do not think it necessary to decide the question here, but I think it proper to express some doubt on extension of the approach in Dorsey v. United States,[1] an approach which I endorsed in my concurring opinion in Bailey v. United States,[2] to the type of situation before us.

That approach is sound when officers want to investigate a situation where the circumstances are suspicious but they don't know what's going on. But care must be taken lest the band of such permissible investigations be stretched to serve as rationalization to justify what is in fact a stop for the purpose of searching for evidence of criminality. Similarly I am uncomfortable with the explanation that a policeman running after a man whom he has seen passing items in the circumstances described here is not launching a search but is merely opening the door to a voluntary dialogue.

Without purporting to say how I would decide, I think it fair to say that I at least have a problem with the question, and with whether the probable cause for the arrest after such a chase can include the material that was dropped by the appellant during the chase. As I do not feel obliged to consider the question here, and think it possible that the Supreme Court may have guidance for us before the question arises again, I concur in the result on the ground I have already stated.

---

4. *Id.* at 24, 259 F.2d at 181.

5. But in the circumstances shown the police certainly were privileged to question him if for no other reason than that he give a good account of himself. Freeman v. United States, 116 U.S.App.D.C. 213, 214, 322 F.2d 426, 427 (1963); *cf.* Brown v. United States, 125 U.S.App. D.C. 43, 46 n. 4, 365 F.2d 976, 979 n. 4 (1966); Lee v. United States, 95 U.S. App.D.C. 156, 221 F.2d 29 (1954).

6. *Cf.* Jackson v. United States, 112 U.S. App.D.C. 191, 301 F.2d 515, cert. denied, 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962).

1. 125 U.S.App.D.C. 355, 372 F.2d 928 (1967).

2. 128 U.S.App.D.C. 354, 389 F.2d 305 (1967).