**UNITED STATES of America**

v.

**Preston JENKINS, Jr.**

**Crim. No. 869–67.**

United States District Court
District of Columbia.

Nov. 28, 1967.

Thomas C. Henley, Legal Aid Agency, Washington, D. C., for defendant.

David G. Bress, U. S. Atty., Washington, D. C., Theodore Wieseman, Asst. U. S. Atty., Washington, D. C., for plaintiff.

## MEMORANDUM AND ORDER

YOUNGDAHL, District Judge.

This matter comes up on a motion to suppress which had previously been assigned to another judge in this Court. It appears from the jacket that this motion was forwarded to the trial judge for decision. After the case was sent to this Court for trial and before selection of a jury, the Court took testimony and heard arguments in connection with said motion.

Two factual conflicts evolved out of the hearing. First, two police officers testified that at the time of the defendant's arrest for carrying a dangerous weapon, the defendant was carrying a trench coat over his arm. The defendant and Mr. White, the friend he was with when arrested, testified that defendant was wearing the coat. The Court held a demonstration which showed that if the defendant was wearing the coat it would have been impossible for the officers to see the gun handle sticking out of defendant's left rear pocket. On the other hand, without the coat the handle sticking out of defendant's left rear pock-

et was clearly visible to the Court at a distance of thirty to thirty-five feet. It was stipulated by counsel that the weather on June 5, 1967, at 7:30 p. m., the time of the arrest, was seventy-eight degrees.

There was a second subsidiary conflict between the officers and the defendant. Defendant and Mr. White testified that at the time of the arrest defendant was carrying a bag of articles that he planned to sell in order to purchase narcotics. The two officers denied ever seeing any bag. The property book at the police station showed no record of any bag, although there was a record of defendant's ring and watch which were returned to him. There was no reasonable explanation of what could have happened to the bag or what motive the police officers would have had to destroy it.

There were some minor differences in the testimony of one of the officers at the hearing to suppress from what he had said at the time of the preliminary hearing, but the officer testified that his memory was more accurate at the preliminary hearing since it was only a day after the arrest. While in a few details there might have been some differences, it is natural that whether defendant was wearing or carrying a coat was a fact that would have stood out more vividly in the officer's mind immediately after the arrest. At any rate the Court is convinced that the two officers told the truth and that the defendant and Mr. White did not. The Court here had the opportunity, after several days of testimony, to carefully observe the demeanor of the defendant and Mr. White as opposed to the officers and this is important when deciding an issue of credibility.

■ At the oral argument defense counsel argued that a person with de-

fendant's prior record would not walk around on a main street with a gun sticking out of his pocket. Defendant and Mr. White, however, testified that at the time of this incident defendant was experiencing withdrawal symptoms and that they were on their way to get the narcotics that defendant needed. This Court feels that, under the circumstances, defendant's conduct was quite understandable. It is common knowledge that a person undergoing withdrawal symptoms does not always act in a rational manner.

■ In view of the foregoing, this Court finds that when the police officer saw the gun handle sticking out of defendant's pocket he had probable cause under 23 D.C.Code § 306(b)[1] to believe that defendant was carrying a dangerous weapon in violation of 22 D.C.Code § 3204.

Defense counsel argues, however, that even assuming that the police had probable cause to arrest defendant, nevertheless, before arresting defendant, the detective could not lawfully seize the gun if his purpose in so doing was to determine whether it was a real or imitation firearm. This argument must be rejected. First, it was defense counsel, on cross-examination, not the police officer, who introduced the possibility that the pistol might be a toy. The officer saw the gun butt sticking out of defendant's pocket and disarmed and arrested him for carrying a dangerous weapon. This is not a case where a "sham" arrest was effectuated merely as a pretext for a search.

■ Secondly, this Court feels that the arrest here took place before the officer approached defendant at the curb and searched him. Before the police got out of the car, one officer saw the gun butt and shouted to defendant, "I have

---

. 23 D.C.Code § 306 reads in pertinent part:
 "(a) Arrests without a warrant, and searches of the person and seizures pursuant thereto, may be made for violation of any section listed in subsection (b), by police officers, as in the case of a felony, upon probable cause that the person ar-

rested is violating the section involved at the time of the arrest.
 "(b) Subsection (a) shall apply with respect to * * * sections 22–3203, 22–3204, and 22–3214, providing for the control of dangerous weapons in the District * * *."

something faster than you have." As a result of this, defendant stopped at the curb and the police got out of the car, seized defendant's gun, and formally placed defendant under arrest. In Kelley v. United States, 111 U.S.App.D.C. 396, 398, 298 F.2d 310, 312 (1961), the Court approved the following instruction:

> You are instructed that in order for there to be an arrest it is not necessary that there be an application of actual force, or manual touching of the body, or physical restraint which may be visible to the eye, or a formal declaration of arrest. *It is sufficient if the person arrested understands that he is in the power of the one arresting and submits in consequence.* [Italics in the original.]

This Court finds that upon seeing the gun butt the officer had probable cause to arrest; when the officer shouted to the defendant, the defendant understood that he was "in the power of the one arresting"; and when the defendant stopped at the curb he was submitting to the arrest. Thus when the officer concluded the arrest was legally made does not supersede the factual situation showing to the contrary.

■ But even if the defendant was not placed under arrest at this point, this Court does not believe that in cases such as this, where probable cause exists before the search is undertaken, it makes a difference whether the arrest precedes the search or the search precedes the arrest, if the arrest and search are substantially contemporaneous. As Justice Traynor stated, writing for the Supreme Court of California in People v. Simon, 45 Cal.2d 645, 648, 290 P.2d 531, 533 (1955):

> [Where the police officer has probable cause to search,] it has been held that it is not significant whether the search precedes or follows the arrest. [Citations.] Thus, if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable

search of the person arrested and the place where he is arrested, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. On the other hand, if he is not innocent or the search does not establish his innocence, the security of his person, house, papers, or effects suffers no more from a search preceding his arrest than it would from the same search following it. In either case the important considerations are whether the officer had reasonable cause before the search to make an arrest and whether the search and any seizures incident thereto were or were not more extensive than would reasonably be justified as incident to an arrest. [Citations.]

Similar considerations underlie the recent decision of the United States Court of Appeals for the District of Columbia Circuit in Haywood Liles v. United States, No. 20807, and John D. Johnson v. United States, No. 20808, decided November 16, 1967. In these consolidated cases, a knife with a three inch blade was in plain view protruding from the pocket of a man who had told the officer he had just been in a street fight. The issue was whether the seizure of the knife was incident to a lawful arrest. The Court of Appeals stated that, "The point must be judged upon the facts of this particular case and not upon a general discussion of the varying meanings of words or legal phrases." (Slip op. p. 3.) Judge Prettyman, speaking for the Court, concluded: "We think the facts make these items [the knife and the defendant's wallet] admissible in evidence under basic considerations which neither require nor justify our venturing into the maelstrom created by the nicer technicalities of the laws of arrest, search and seizure, and the fruit of poisoned trees." (Slip op. p. 4.)

In situations like the one involved in the instant case, an officer can never be *sure* that a gun on a defendant's person is an operable weapon. It is too much to ask of our law enforcement officers that upon seeing a gun on a person, they must ask the person to remove the gun himself, and then show it to them in order to protect an arrest. No such dangerous requirement lies within the shadow of the Fourth Amendment. In view of the foregoing it is ordered that, the motion to suppress is hereby denied.

During the hearing the Court ordered an examination of the defendant by Dr. Lanham of Psychiatric Legal Services who found the defendant competent to stand trial. The defense attorney indicated that he did not wish the defendant committed to Saint Elizabeths Hospital for mental observation, since defendant had undergone such an examination for another case. Defense counsel, however, did indicate that defendant may raise an insanity defense at trial and the Court, upon request from defense counsel, will appoint a psychiatrist to examine defendant for this purpose. Defendant should promptly submit an order to the Court for this purpose if so desired.