FRANK E. READ *v.* STATE

5261                                                    415 S. W. 2d 560

Opinion delivered June 5, 1967

*Larry S. Patterson,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. This appeal comes from an order denying appellant's petition for post conviction relief from consecutive sentences of twelve years on one count of robbery and eight years on another, and a sentence of three years on a charge of burglary, to be concurrent with the latter sentence on robbery, all imposed on April 15, 1960. To all of these charges appellant had entered pleas of guilty on the day sentences were imposed, competent counsel having been appointed for him by the trial court on April 8. The trial court heard the petition on September 19, 1966. In addition to the petitioner, his mother, Mrs. Katherine Read, his father, John L. Read, his sister, Johnnie

Camp, his brother, Thomas T. Read, and his wife testified in his behalf.

The trial judge made detailed findings against the contentions of appellant. These findings were based for the most part on testimony of the following on behalf of the state: Three police officers on duty at the time of appellant's arrest, who were on the lookout for the person or persons who committed the crimes with which appellant was charged; a state police officer who took a statement from appellant on the day of his arrest; one James Puryear, an alleged victim of a felonious assault with which appellant was charged, but on which he has not been tried or sentenced; the Honorable Royce Weisenberger, now chancellor of the sixth district, the prosecuting attorney at the time of the arrest and sentencing; and the deputy prosecuting attorney at the time, Judge John Wilson, now Municipal Judge at Hope.

The points urged for reversal allege error of the trial court in its findings based upon the following contentions:

1. The sentences were based upon an invalid arrest and an invalid search and seizure;

2. The statement of appellant was coerced because appellant was held and questioned incommunicado without benefit of counsel and without being allowed to contact his family for assistance;

3. Appointed counsel was not competent because appointment was made at such a time that they were not effective to prepare his defense.

We will discuss these points in the order listed. In considering the search and appellant's statement, it is well to remember that no prejudice could result from either since he pleaded guilty and nothing was ever introduced in evidence against him. *Medley* v. *Stephens*, 242 Ark. 215, 412 S. W. 2d 823. There was substantial

evidence to support the finding of the trial court that the arrest without a warrant was lawful and the search reasonable. City police officers Shirley and Rowe and state policeman Ward were informed of certain robberies which had taken place in Hope on the night of April 7th and were patrolling the city. Ward was in the neighborhood of the Puryear and Hartsfield homes when he saw a Cadillac automobile driven across a yard and then heard something like a pistol "popping" near the Puryear home. He was behind the houses across the street when he saw the city police car turn in and the Hartsfield car backing out the driveway at the Hartsfield residence; he also saw the abandoned Cadillac. He went to the police station after the arrest. He did not see anyone interrogate Read.

Officers Shirley and Rowe (who were accompanied by Police Chief Brown, now deceased) made the arrest. Officer Shirley testified in substance: After I was given a report on the type vehicle whose occupant had committed a robbery, I saw appellant while I was standing in front of the police station after 1 a.m. I got in the police car, got an assistant and tried to overtake the vehicle in which I saw appellant but lost it in a cloud of dust as it passed a truck by going onto the right shoulder of the highway. Later, I saw the vehicle again and attempted to overtake it but while I was turning around, it passed a truck and I lost it. While trying to locate the automobile, we heard something like pistol shots and saw lights at the Puryear home and found confusion there. After a conversation with Puryear, who had some pistol wounds, we drove east on Highway No. 4 and noticed an automobile backing out of the Herbert Hartsfield driveway. I did not recognize the driver, seeing only the back of his head, but I knew it wasn't Hartsfield. After the police car was stopped so the car could not get out the driveway, I got out and stopped at the left rear fender of the car; Officer Rowe went around to the right side of the car and opened the door. I went to the left door and opened it; I recognized that this was Hartsfield's car and saw Hartsfield and his wife

inside the screen door; the appellant was arrested, searched and placed in the police car.

Officer Rowe's testimony was substantially the same as that of Officer Shirley except that Rowe said he thought the driver of the car at the Hartsfield house was Hartsfield himself and that he made the statement that he was going to ask Hartsfield, whom he knew, if he had seen anything of the party they were looking for. He said that he did not recognize that it was not Hartsfield until he had opened the car door and partially entered the car when he told appellant to stop and struck the latter with a pistol when he failed to do so.

James Puryear told of a threat by appellant to kill him after Puryear saw appellant in the driveway of the Puryear home about 3:30 or 4 in the morning. Puryear said that after the threat he grabbed appellant and the gun and that appellant shot him after a scuffle in the doorway and kitchen of the house. Puryear told of reporting the matter to officers Shirley, Rowe and Brown who came to his house immediately after the shooting.

An officer may make an arrest without a warrant when he has reasonable grounds for believing that the person arrested has committed a felony. Ark. Stat. Ann. § 43-403 (Repl. 1964); *Lane, Smith & Barg* v. *State*, 217 Ark. 114, 229 S. W. 2d 43; *Russell* v. *State*, 240 Ark. 97, 398 S. W. 2d 213.

In view of the passage of over six years, the excitement of hot pursuit of an armed felon, and the fact that officers Rowe and Shirley approached the Hartsfield vehicle from opposite sides, the minor discrepancy as to the recognition of the driver is insignificant.

Nothing was found upon search of appellant except a gun holster. The search incident to the arrest was lawful. *Draper* v. *United States*, 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327. There was also substantial evidence to support the finding that appellant's statement

was not coerced. It was taken by Milton Mosier of the Arkansas State Police at the sheriff's office about 10:30 a.m. Mosier testified that the statement was voluntary, that he made no promises or threats to appellant, nor did he coerce him in any manner. It was taken on the same day (April 8th) appellant was taken to court. Mosier could not be sure whether the statement was before or after appellant's arraignment, but felt that it was before because he gave the original of the statement[1] to one of appellant's court appointed attorneys.

There was testimony that appellant was not interrogated en route to the city jail when he only made a statement that he could show the officers where he "ditched" a car. He was taken to the police station about 5:30 a.m. Officer Shirley said that appellant was then in a jovial mood, saying that he supposed he would get life, but there wasn't any use crying over spilt milk. Shirley and Rowe went off duty shortly thereafter and knew of no interrogation of appellant.

The only evidence of the use of any physical force was that at the time of arrest and a later assault by James Puryear on appellant, while the latter was in custody of the officers shortly after the arrest. Appellant admitted that the officers restrained Puryear after he struck appellant. Appellant also said that the officers struck him with pistols at the time of the arrest, several times rather than once. His major contention in this regard, though, was that he was questioned after he asked to be allowed to see an attorney; was not allowed to communicate with anyone, particularly members of his family; and was told by some man that if he fought, it would go harder on him, but if he would confess, they would try to get the judge to go a little easier on him. He said the man who took his statement told him it

---

[1]This statement was a confession of the robbery of two service stations in Hope, the attempted theft of the Hartsfield automobile, several felonies in Texas by which he attained the automobile in which he came to Hope and a pistol, and the shooting of Puryear, which he claimed to be in self defense.

would go harder if he did not confess because the judge was already mad at him.

The rules laid down in *Miranda* v. *State of Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and *Escobedo* v. *State of Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, do not apply here. *Johnson* v. *New Jersey*, 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882; *Jackson* v. *State*, 241 Ark. 850, 410 S. W. 2d 766.

Appellant also claims that he asked one of the court appointed attorneys to call his family. He states that he never heard from any member of his family before his sentencing. Neither of the attorneys could recall appellant's alleged request. Appellant's mother learned of his arrest by means of a television report on a Fort Worth station. His father heard that appellant was in difficulty near the time of his arrest from someone who heard of it on television. He was told that it took place at Hope. He made no effort to contact appellant because of a feeling that appellant would contact him if the former needed him and felt that he could help. He further testified that he did not hear from appellant until months later. Appellant's wife was advised while visiting at her mother's home through a letter from a friend. She also received a letter from appellant while he was in the county jail at Hope. None of these parties got in touch with appellant or did anything to help, although they obviously knew that he was in jail at Hope. The trial judge stated that appellant made no request on appearance in court that his family be contacted. The inaction of these members of appellant's family tends to corroborate testimony that appellant did not request that they be called.

It is undisputed that two attorneys were appointed by the trial court to represent appellant on the day of his arrest. While a statement made by appellant was promptly furnished to his attorneys, each said he made an independent investigation of the charges, talking to some of the witnesses. One of the attorneys conferred with appellant two or three times. The other partici-

828

pated in a thirty-minute conference with appellant and the other attorney. Although Read contended that one of them asked that he be allowed not to represent appellant, this is flatly denied by the attorney. After the investigation and conferences, both recommended that appellant plead guilty to the charges on which he was sentenced, feeling that this was to appellant's best interest. It is significant that appellant pleaded not guilty to four of the seven counts of felony with which he was charged. Four days elapsed between appointment of counsel and the entry of defendant's pleas. Another three days passed before sentence was imposed. We find sufficient evidence to support the finding that appellant had competent and effective counsel.

Appellant attacked the constitutionality of the imposition of consecutive sentences as provided by Ark. Stat. Ann. § 43-2311 (Repl. 1964). This contention appears to be without merit. It was not urged in appellant's brief nor were any authorities cited. *Maples* v. *State*, 226 Ark. 485, 290 S. W. 2d 627.

Affirmed.

BROWN, J., disqualified and not participating.