**Nathaniel REED, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19112.**

United States Court of Appeals Eighth Circuit.

Sept. 26, 1968.

George Howard, Jr., Pine Bluff, Ark., for appellant.

Robert F. Fussell, Asst. U. S. Atty., Little Rock, Ark., for appellee, W. H. McClellan, former U. S. Atty., W. H. Dillahunty, present U. S. Atty., Little Rock, Ark., on the briefs.

Before MATTHES and HEANEY, Circuit Judges, and REGISTER, Chief District Judge.

MATTHES, Circuit Judge.

A two-count indictment charged that defendant had violated 26 U.S.C. § 5851.[1] He waived trial by jury. Upon finding defendant guilty as charged, Judge Young sentenced him to imprisonment for a period of "three years on the indictment as a whole." This appeal followed.

Omitting its formal parts Count I charged:

"That on or about May 20, 1967, in Pine Bluff, Jefferson County, Arkansas, and in the Eastern District of Arkansas, NATHANIEL REED, defendant herein, knowingly and unlawfully possessed a firearm, as defined by Section 5848(1), Title 26, United States Code, to wit, a weapon made from a 12-gauge shotgun, serial number 799461, with barrel 14⅜ inches in length and with overall length of

---

1. Section 5851 provides in pertinent part: "It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of sections 5811, 5812(b), 5813, 5814, 5844, or 5846, or which has at any time been made in violation of section 5821, or to possess any firearm which has not been registered as required by section 5841. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury."

less than 26 inches, which firearm had been made in violation of Section 5821, Title 26, United States Code, in that the making tax of $200 had not been paid prior to the making of this firearm, and in that, prior to the making of such firearm, there was a failure to file a written declaration of intention to make such firearm, as required."

Count II was identical with respect to the date and place of the commission of the offense and the description of the firearm. The gravamen of the offense in this count was that the firearm had not been registered with the Secretary of the Treasury as required by 26 U.S.C. § 5841.

The trial, conviction and appeal occurred prior to the decision of the Supreme Court in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (January 29, 1968). *Haynes* holds that a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm under 26 U.S.C. § 5841 or for possession of an unregistered firearm under 26 U.S.C. § 5851. The Government concedes here that the defendant did not knowingly waive his constitutional privilege against self-incrimination and that the conviction under Count II cannot stand. See Dillon v. United States, 389 F.2d 381 (8th Cir., February, 1968). We agree and reverse the judgment under Count II with directions to dismiss that count.

■ This result does not dispose of Count I. Where, as here, a general sentence is imposed on more than one count it will be sustained if the defendant was properly convicted under any count. Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959); Isaacs v. United States, 301 F.2d 706, 733 (8th Cir.), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). Defendant implicitly recognizes the validity of this proposition.

The questions at issue on appeal are: (1) whether the district court erred in denying defendant's motion to suppress the firearm because the search and seizure was unlawful and unreasonable; (2) whether the conviction of the offense of possession of the firearm made in violation of § 5821 is subject to the same infirmity of the offense of possession of an unregistered firearm. More precisely, do the facts bring this case within the principle promulgated in *Haynes* and the related cases of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (January 29, 1968).

## PROBABLE CAUSE

Defendant challenged the validity of the search and seizure by a pre-trial motion to suppress in which he asserted that there was no probable cause for the arrest. After a full evidentiary hearing the court denied the motion. The evidence developed on the motion established that defendant was arrested by police officers without a warrant in the City of Pine Bluff, Arkansas. They acted in large measure upon information received from Gene Holland, the operator of the Rose Oil Service Station, located at 4211 Dollarway Road in Pine Bluff. Holland, whose testimony stands uncontradicted, stated that at approximately 2:45 a. m. on May 20, 1967, three automobiles "pulled up" to his station. One was a red and white 1960 or 1961 Chevrolet. Another, a 1955 white four-door Ford. The third, a dove-colored Falcon or Fairlane Ford. The occupants of the automobiles were Negroes. The driver of the Chevrolet purchased a small quantity of gasoline for which he paid $1.00. Holland observed the occupant of the 1955 Ford open the trunk of that automobile, remove a sawed-off shotgun and place the gun in the front seat or on the floorboard. Three of the group "huddled right there together * * * and was talking." He also saw one of the "boys" remove a pistol from the 1955 Ford and "stick" it in his pocket. Another went to the other side and "got one [pistol] and stuck it in his pocket, * * *."

759

Thereupon the three automobiles left in "kind of a hurry." Immediately thereafter, Holland telephoned police headquarters, identified himself and detailed what he had witnessed. He was aware of a burglary of another Rose Oil Service Station. Additionally, he had called upon the police for assistance on three prior occasions: "one was for drunk"; "one was for a wreck"; and "one was for pulling a gun on me * * *."

When Holland was pressed on cross examination for the reason he reported the matter to the police, he stated: "Well, I thought—I thought they was aiming to rob the station. That's the reason I called them. That's the most reason I called the law."

Holland's telephone message to police headquarters was relayed by radio to members of the Pine Bluff police force at approximately 3:00 a. m. The dispatcher described the three automobiles and advised that the occupants were in possession of one sawed-off shotgun and two pistols. Officer Blythe, who was one of the patrolmen who received the message, had personal knowledge of recent robberies in Pine Bluff committed with use of sawed-off shotguns. Shortly after the orginal dispatch, a police officer in another automobile radioed that he was pursuing "the three cars in question." Blythe and the officer accompanying him immediately proceeded to the designated vicinity to assist the pursuing officer. At Sixth and Laurel streets three police cars converged on three automobiles of the exact description furnished by Holland. One of the police vehicles formed a roadblock and stopped the automobiles. At the command of the officers the occupants emerged from their automobiles. They were questioned. The defendant admitted he was the driver of the 1955 Ford. Upon searching that automobile Blythe observed the sawed-off shotgun under the front seat and removed it. The pistols were not located by the officers. Officer Blythe then formally placed defendant under arrest. He was taken to the police station where he was booked for the

possession of the weapon. There he falsely stated that his name was Australia Reed. Australia is defendant's brother.

The record reveals that the weapon was a 12-gauge shotgun having a barrel length of 14⅜ inches, an overall length of 22 inches and a "pistol grip." One of the officers tested the weapon and found it would fire.

Defendant did not testify at the hearing on the motion to suppress. He did, however, take the stand during the trial of the case. His defense was that he did not know that the gun was in the automobile. This was in direct conflict with not only the testimony of Holland, but of. one of the occupants of defendant's automobile, who stated that she observed defendant place the gun under the front seat while the automobile was on the premises of the Rose Oil Service Station. Defendant admitted he had been convicted of second degree murder in California and was on parole at the time of the incident in question.

■ Defendant asserts here as he did in the district court that the officers acted without probable cause and upon mere suspicion; that the arrest was subsequent to the seizure of the weapon and consequently was not based upon reliable information acquired before the search and seizure. Defendant's attack is based solely on his Fourth Amendment right to be secure against an unreasonable search and seizure. He has completely ignored the law of the place of arrest. The principle is established that the lawfulness of an arrest by state officers for violation of federal law is to be determined by state law insofar as it is not violative of the Federal Constitution.

In Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Court in speaking of the law to be applied stated:

"This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrests for federal offenses is to be determined by reference to state law *insofar as it is not violative of the Federal Consti-*

*tution.* Miller v. United States, supra [357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed. 2d 1332]; United States v. Di Re, 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210] (1948); Johnson v. United States, 333 U.S. 10, 15, n.5, [68 S.Ct. 367, 92 L.Ed. 436] (1948)." 374 U.S. at 37, 83 S.Ct. at 1632. (Emphasis supplied.)

See also Miller v. United States, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); compare Cooper v. California, 386 U.S. 58, 788, 17 L.Ed.2d 730 (1967).

The courts of appeals have recognized and applied this rule. See Theriault v. United States, 401 F.2d 79 at 81 (8th Cir., Sept. 6, 1968); McClard v. United States, 386 F.2d 495 (8th Cir. 1967); Dorsey v. United States, 125 U.S.App. D.C. 355, 372 F.2d 928 (1967); Myricks v. United States, 370 F.2d 901 (5th Cir. 1967); Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966).

Turning to local law we find that Ark. Stat.Ann. § 43–403 (1947) specifically authorizes a peace officer to make an arrest without a warrant where a public offense is committed in his presence or where he has reasonable grounds for believing that the person arrested has committed a felony. Arrests based on probable cause have been sustained by the Supreme Court of Arkansas. Read v. State, 242 Ark. 821, 415 S.W.2d 560 (1967); Smith v. State, 241 Ark. 958, 411 S.W.2d 510 (1967); Russell v. State, 240 Ark. 97, 398 S.W.2d 213 (1966). In *Theriault,* supra, we equated Arkansas' statutory standard of reasonableness with probable cause. 401 F.2d 79 at 81.

From pronouncements of the Supreme Court of the United States there have emerged clear guidelines which must be taken into account in determining whether an arrest, search and seizure runs afoul of the Fourth Amendment's protection against unreasonable search and seizure. An " 'arrest on mere suspicion collides violently with the basic human right of liberty'." Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). The *Henry*

Court announced that while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause. Id. at 102, 80 S.Ct. 168. On the other hand evidence required to establish guilt is not necessary. Id. at 102, 80 S.Ct. 168; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In *Brinegar* the Court observed:

" 'the substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt' * * * Since Marshall's time, at any rate, it has come to mean more than bare suspicion; Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]." 338 U.S. at 175–176, 69 S.Ct. at 1310.

See also Theriault v. United States, supra; Clay v. United States, 394 F.2d 281 (8th Cir. 1968); United States v. Jones, 340 F.2d 913 (7th Cir. 1965); Schook v. United States, 337 F.2d 563 (8th Cir. 1964); Hawkins v. United States, 288 F.2d 537 (8th Cir. 1961). (In *Theriault, Clay, Schook* and *Jones* the arrests were made by state officers).

Whether measured by tests established by the law of Arkansas, or by constitutional or other federal standards, we have no difficulty in affirming the court's denial of the motion to suppress.

■ The information within the knowledge of the officers was sufficient in itself to warrant a reasonably cautious man to believe that a felony had been or was being committed. The information emanated from a reliable source. The record does not explicitly reveal that the

participating officers were personally acquainted with Holland, but the evidence strongly suggests that he was known to the police department as trustworthy and dependable. Beyond doubt the suspicious actions of the occupants of the three automobiles at the service station in the early morning hours and the possession by one of them of the sawed-off shotgun and by two others of pistols presented a situation which would prompt any law abiding citizen to immediately notify the police as Holland did. Having been reliably informed that the occupants were armed with weapons, and being aware of recent robberies involving sawed-off shotguns, the officers responded to the call of duty and took action which culminated in the arrest of the defendant. Upon the basis of the circumstances related to the officers, along with their personal observations and knowledge, the district court was fully justified in holding that the arrest and the search and seizure comported with constitutional requirements. As aptly stated in United States v. Jones, supra, involving similar facts, "the necessity of securing a warrant, under these circumstances, would be as naive and impracticable as it would have been in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543." 340 F.2d at 914.

██ We are not persuaded by the argument that the search was invalid because it preceded the moment when Officer Blythe formally informed the defendant that he was under arrest. According to the evidence the formal declaration was made contemporaneous with or immediately after the shotgun was seized. "An arrest to be effective does not require formal words of arrest or stationhouse bookkeeping." United States v. Hensley, 374 F.2d 341, 348 (6th Cir.), cert. denied, 388 U.S. 923, 87 S.Ct. 2139, 18 L.Ed.2d 1373 (1967). Here, the evidence conclusively demonstrates that the defendant's liberty of movement had been effectively restricted by the police officers. The roadblock prevented movement of defendant's automobile. The command to emerge from the automobile was reinforced with the display of a shotgun and sidearms in the hands of the officers. All of this occurred before the search of the automobile. In our view the arrest had been consummated before the search and it was not altered in point of time by anything which was thereafter said or done. Henry v. United States, supra, is apposite. There the officers stopped the automobile, searched it and discovered cartons of merchandise which had been stolen from an interstate shipment. Two hours after the search and seizure the officers placed the defendants under formal arrest. In addressing itself to the question of the time of arrest the Court held:

"The prosecution conceded below, and adheres to the concession here, that the arrest took place when the federal agents stopped the car. That is our view on the facts of this particular case. When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete. It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed." Id., 361 U.S. at 103, 80 S.Ct. at 171.

See also United States v. Hensley, supra; Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961).[3]

We affirm the denial of the motion to suppress.

## APPLICABILITY OF HAYNES v. UNITED STATES

Apart from the motion to suppress the firearm as evidence on the grounds above discussed defendant made no attack before, during or after the trial

---

3. We are aware that there are situations where the stopping of a person for investigation is not sufficient in itself to constitute an arrest in the legal sense. Gullett v. United States, 387 F.2d 307 (8th Cir. 1967); Rodgers v. United States, 362 F.2d 358 (8th Cir.), cert. denied, 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed. 2d 454 (1966).

against either count of the indictment. Indeed, defendant did not in his first brief, filed March 13, 1968, approximately two months after the decisions in *Haynes, Marchetti* and *Grosso,* claim that those cases applied to the making provision of § 5851. This question arose during oral argument. Notwithstanding the then posture of the case, the court invited and has received briefs directed to this issue.

Defendant, relying on *Haynes,* attempts to demonstrate that payment of the making tax and the filing of the written declaration of the intention to make a firearm, as required by § 5821, cannot be distinguished from § 5841 which requires every possessor of a firearm to register the same. After careful analysis of *Haynes, Marchetti* and *Grosso* we have reached the conclusion that on this record those cases are not controlling.

*Haynes* was focused upon that part of § 5851 which makes it unlawful to possess a firearm which has not been registered as required by § 5841. The *Haynes* Court did not strike down §§ 5851, 5841 or any other section of the National Firearms Act, as unconstitutional per se. The problem confronting the Court was whether the act of registering a firearm, as required by § 5841, violates a defendant's privilege against self-incrimination as guaranteed by the Fifth Amendment. 390 U.S. at 86, 88 S.Ct. 722. This is clear from the following pronouncement:

> "At the outset, it must be emphasized that the issue in this case is not whether Congress has authority under the Constitution to regulate the manufacture, transfer, or possession of firearms; nor is it whether Congress may tax activities which are, wholly or in part, unlawful. Rather, we are required to resolve only the narrow issue of whether enforcement of § 5851 against petitioner, despite his assertion of the privilege against self-incrimination, is constitutionally permissible. The questions necessary for decision are two: first, whether petitioner's conviction under § 5851 is

meaningfully distinguishable from a conviction under § 5841 for failure to register possession of a firearm; and second, if it is not, whether satisfaction of petitioner's obligation to register under § 5841 would have compelled him to provide information incriminating to himself." 390 U.S. at 90, 88 S.Ct. at 726.

After thoroughly analyzing the question at hand the Court concluded:

> "We hold that a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm under § 5841 or for possession of an unregistered firearm under § 5851." 390 U.S. at 100, 88 S.Ct. at 732.

█ It is readily apparent from defendant's supplemental brief that he recognizes this vital aspect of *Haynes.* And in an effort to demonstrate that this case falls within the Court's holding he urges that the information which the maker of a firearm is required to supply in the declaration of an intention to make would be self-incriminating. The weakness of defendant's approach is the factual base upon which he rests his argument. He was charged with possessing the sawed-off shotgun which "had been made in violation of § 5821, * * * in that the making tax of $200.00 had not been paid prior to the making of this firearm, and that prior to the making of such firearm there was a failure to file a written declaration of intention to make a firearm as required." *The indictment does not allege that he was the maker of the firearm.* Moreover, the proof conclusively demonstrates that he was not. The Government's evidence established the two essential elements: (1) possession by defendant; (2) no record of the payment of the making tax and the filing of the declaration of the intention to make. The defendant denied having knowledge of the ownership of the firearm, its source, or its presence in the automobile. In this setting, the defendant's invocation of his privilege

against self-incrimination is not well taken, since his offense derived not from his own failure to comply with the making provisions but rather from his possession of the firearm illegally made by others. We do not believe the Supreme Court intended that its holding in *Haynes* should be applied to a situation where, as here, the defendant was under no statutory command to and did not in fact supply any self-incriminating information.

We pretermit discussion or decision of the question whether one who makes a firearm and is charged with possession of it could successfully assert that by filing the declaration of intention to make he is compelled to furnish incriminating evidence to himself. That issue is not before us.

The conviction under Count II is reversed with directions to the district court to dismiss that count. In all other respects the judgment is affirmed.