WILLIAM PAUL ADAMS *v.* STATE OF ARKANSAS

5772                                               485 S.W. 2d 746

Opinion delivered October 23, 1972

*Ike Allen Laws Jr.,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, William Paul Adams, on April 12, 1971, pleaded guilty to charges of armed robbery, kidnapping, and grand larceny in Johnson County, Arkansas, and was sentenced to ten years in the Arkansas Department of Correction on each charge, the sentences to run concurrently. On March 23, 1972, appellant filed a Criminal Procedure Rule I motion, alleging the violation of constitutional rights and the court, on May 4, 1972, conducted a hearing on this motion, several witnesses testifying. At the conclusion of the hearing, Adams requested that he have another witness obtained to testify on his behalf, this witness being a fellow prisoner who had been confined with Adams in the county jail and who according to Adams, witnessed the officers taking a lock of appellant's hair. The circuit court adjourned the hearing, directed the issuance of a subpoena and ordered the sheriff to secure the witness. On June 22, 1972, the hearing was resumed, appellant being present, at which time the sheriff reported that he had been unable to locate this witness, even though he had make a trip to Springdale to search for the witness at the request of the appellant. The hearing was then closed and appellant's motion to vacate the judgment was denied.

It is first contended that appellant's constitutional rights were violated by the manner in which a lineup was conducted. The record reflects that Mr. Edward Patterson, an attorney of Johnson County, was originally appointed to represent Adams prior to arraignment, and Patterson testified that he was present at the lineup which took place in the courtroom, and that he advised appellant of his rights. Patterson testified that he did not see anything unusual and that the officers did not give any indication to those viewing the lineup that Adams was the party to be identified. Adams, who asked for the lineup, testified that he had been in a few lineups in California and that

"suspects are supposed to be lined up accordingly and witnesses come in one at a time to make identification". He said that all the witnesses were in the courtroom at the same time, although he stated that he did not see the officers talk to any persons who were there to identify him, nor did the officers sit with the people who were there for identification purposes. Adams testified that the people in the lineup with him had "southern accents", though he stated that he was dressed no differently from other people in the lineup;[1] that there were some who were about his size. Assistant Chief of Police Earl Hunt testified that there was no one from the deep south in the lineup, and there was one boy from Arkansas, one from Oklahoma, and one from "back east". A photograph taken reflects that six people appeared in the lineup, all of the same race, all around the same age, and Adams was permitted to stand while the lineup was being conducted in the position that he desired.[2] Counsel for Adams was asked if he desired that another boy be brought in but he replied that another boy was not needed and Adams did not object to those who appeared with him. Though the witnesses were all in the courtroom, they were not sitting together. The lineup appears to have been fairly conducted, but at any rate, no prejudice could have resulted since Adams pleaded guilty and no evidence was introduced against him. See *Williams* v. *State,* 215 Ark. 757, 223 S.W. 2d 190; *Medley* v. *Stephens, Supt.,* 242 Ark. 215, 412 S.W. 2d 823; *Read* v. *State,* 242 Ark. 821, 415 S.W. 2d 560.

It is next asserted that appellant's right against self-incrimination was violated because a lock of his hair was taken by Hunt and another officer while Adams was confined in the county jail. Hunt testified that the police found a lock of hair in a window in a wrecked Oldsmobile in which they believed appellant had been riding as a passenger, and that the purpose of taking the lock of hair from Adams was to compare the two. Fingerprints had been lifted from the car and proved to be those

---

[1] One of the officers testified that Adams was wearing a "bush type" coat.

[2] Appellant stood on the left end of the line.

of Adams. As to appellant's argument, it appears in the first place, that there really was no objection to the lock of hair being taken, but were it otherwise, the contention would still be without merit. It has been held that only testimonial evidence is protected as being within the scope of the privilege against self-incrimination guaranteed by the Fifth Amendment to the Federal Constitution; *Schmerber* v. *California*, 384 U. S. 757; *McGinnis* v. *State*, 251 Ark. October 18, 1971. Adams asserts that his plea of guilty was based in part upon the fact that the officers had taken this lock of hair. Actually, when asked if the fact that the officers had taken a lock of his hair influenced his pleading guilty, Adams replied "In a way, it did, sir", explaining that he figured the evidence obtained would be used at the trial. He subsequently stated that his plea was influenced by the fact that the state had quite a bit of evidence against him, and he wouldn't have pleaded guilty except for that fact. In *Bradshaw* v. *State*, 250 Ark. 135, 464 S.W. 2d 614, we commented "That a plea of guilty is induced by the possibility of the prisoners receiving a more severe sentence does not establish coercion", and we cited *Brady* v. *United States*, 397 U.S. 742.

Finally, it is asserted that at the time of his initial arrest, Adams was not advised of his constitutional rights. It appears that appellant was arrested in Ohio by the Federal Bureau of Investigation, at which time he was told that he was arrested for kidnapping. Appellant stated that he was not advised of his rights at that time. Subsequently however, he was advised that four felony charges were pending against him in Arkansas, and he testified that he was advised of his rights and told what would happen if he waived extradition and returned to this state. No statements were made, nor confession given, by Adams and it is thus difficult to ascertain how he would have been prejudiced, even though he were not advised of his rights.

When Adams entered his plea of guilty, he was represented by counsel[3] who had conferred with him prior

---

[3]Attorney Patterson's son was appointed Deputy Prosecuting Attorney and the court named new counsel for Adams, Mr. Ike Allen Laws, Jr.

to the plea. Adams testified that the court told him that he had the right to a trial by jury; that he was aware that the court intended to sentence him to ten years when he entered the plea, having been told that already by his attorney, and it simply appears that Adams felt that he would get less time by pleading guilty than by going to trial; at least, it is quite evident that he did not want to risk a trial. We agree with the trial court that no constitutional rights were violated, and that the plea was voluntarily entered.

Affirmed.