CHARLES POE *v*. STATE OF ARKANSAS

5779                                        488 S.W. 2d 21

Opinion delivered December 18, 1972

*Jack L. Lessenberry*, for appellant.

*Ray Thornton*, Atty Gen., by: *James A. Neal*, for appellee.

CARLETON HARRIS, Chief Justice. Charles Poe, appellant herein, was convicted for forgery and uttering and the conviction was affirmed by this court. See *Poe v. State*, 251 Ark. 35, 470 S.W. 2d 818. Subsequently, Poe filed an application here seeking permission to proceed under Criminal Procedure Rule I for the vacation or correction of his sentence imposed by the Pulaski County Circuit Court, and this court granted permission for him to proceed, limiting the hearing however to, "his allegations that he was denied effective assistance of counsel and this his sentence is excessive by reason of improper procedures in application of the habitual criminal act." Thereafter, Poe filed his petition in the Pulaski County Circuit Court setting out numerous grounds in addition to those permitted by our per curiam order. A hearing was conducted, and at the conclusion thereof the court rendered its findings on the basis of our per curiam order, and denied relief, finding that appellant had not been denied effective assistance of counsel and that appellant had "failed to advance anything but his naked assertion that the habitual offender statute was unconstitutionally applied to his case." From the judgment dismissing the petition and remanding Poe to the Department of Corrections, appellant brings this appeal. For reversal, it is first asserted that Poe was deprived of the effective assistance of counsel.

As to this allegation, Poe stated that he met Louis Rosteck, appointed by the court to represent Poe, when he came to court for plea and arraignment. He said that he was visited one time, and that he did not recall the substance of the conversation held, but that Rosteck was not there but about ten minutes. Appellant stated that the attorney asked him about the possibility of entering a plea of guilty but that he (Poe) did not wish to plead guilty because he was not guilty. Admittedly, he did not ask counsel to call witnesses because "I didn't have any witnesses". As to other allegations of inadequate counsel, Poe stated "Well, I tried to get Mr. Rosteck to bring up the fact that I didn't have a lawyer during the preliminary hearing, or anything. I tried to get him to file a motion to suppress the evidence on it, on me, of the handwriting or anything taken during that time, and he wouldn't do it."

Further, he stated that his lawyer would not allow him to take the stand and testify. When asked if he realized if the attorney had placed him on the stand in his own behalf that the prosecution could have then brought out his prior convictions, Poe replied "The way I was looking at it, if I took the stand, I could have maybe beat the other charge and that way they couldn't put the habitual criminal act on me at all."

Mr. Rosteck, a practicing attorney for approximately twenty years, testified that he was appointed to represent Poe at his plea and arraignment on November 2, 1970; that he talked with Poe at that time, having seen the prosecuting attorney's file, and going over that file with appellant. He said that he talked with Poe about thirty minutes, after which a plea of not guilty was entered. A few days later, he went to the jail and talked with appellant, after which he went back to the prosecuting attorney's office and took another look at the Poe file. Rosteck then returned to the jail and informed Poe that the evidence was very strong against him, particularly the fact that he would be positively identified by the "man at the bank". He also pointed out the fact that Poe had a prior record. The attorney said that they talked of

the possibility of a plea of guilty and he advised appellant that he might possibly get three or four years on a plea of guilty, but Poe stated that he was innocent. Rosteck testified:

"I was convinced myself that they had a fairly strong case against him, and that was my reason concerning the plea. I wanted to give him something that I had there, the good possibilities of what he could get. He said he did not want to plead guilty, and I said, 'You don't have to; I don't want you to.' so the case did proceed to trial. I did get him up here in the courtroom, and we proceeded to try the case and I tried that case as hard as I try any case and, in fact, the jury—and I pointed out to the jury how long he had been in the county jail, and the record reflects that even the foreman of the jury, not only finding him guilty and gave him the minimum sentence of two years, but even recommended to the court that credit be given on the time that he had already previously been in the county jail."

As to Poe taking the stand for the purpose of testifying in his own defense, Rosteck stated:

"At the time it came for him to take the stand, I asked him, I said, 'All right, you heard what they said. Now, if you want to take that stand, you can, I am advising you against it.' I said, 'Because if you testify, they are going to ask you questions as to your record,' and he said he didn't want to testify. He said, 'Well, I agree with you on that point.'"

Rosteck said that he advised Poe that it was not a violation of his rights to take the handwriting samples. This advice, of course, under our decisions, was correct. In *McDonald* v. *State*, 253 Ark. 23, 484 S.W. 2d 345, McDonald contended that using a letter he had written from the jail to make comparison with the signature on the check (which he was accused of forging) violated his constitutional rights. We disagreed and held the contention to be without merit. We cited *Robinson* v. *United States*,

144 F. 2d 392, where an objection was made to the introduction of letters written by appellant and used for handwriting comparison with a ransom note. Appellant contended that the letters were in the nature of an involuntary confession of guilt and were therefore inadmissible but the court held the contention to be unsound. In *Adams* v. *State*, 253 Ark. 286, 485 S.W. 2d 746, the appellant contended that his right against self-incrimination was violated because a lock of his hair was taken while he was in the county jail and used for comparison with a lock of hair found in a window of a wrecked automobile in which it was believed that appellant had been riding. We held the contention to be without merit, stating:

"As to appellant's argument, it appears in the first place, that there really was no objection to the lock of hair being taken, but were it otherwise, the contention would still be without merit. It has been held that only testimonial evidence is protected as being within the scope of the privilege against self-incrimination guaranteed by the Fifth Amendment to the Federal Constitution; *Schmerber* v. *California*, 384 U.S. 757; *McGinnis* v. *State*, 251 Ark. October 18, 1971."

As to not taking the stand to testify, Poe admitted four or five convictions, and it certainly is understandable that his counsel would hesitate to place him on the stand. However, Rosteck testified that while he advised appellant against taking the stand in his own behalf, he told him that he could take the stand if he desired to do so. This is generally the position taken by defense attorneys in this area and there is no reason to doubt the testimony of counsel. Mr. Rosteck has practiced law nearly twenty years, and has tried dozens of criminal cases. When we consider that the jury only fixed the time to be served at the minimum, and even then, according to the evidence, recommended that Poe be given credit for the time he had been in jail, it appears that his representation was certainly adequate, and we agree with

the trial court that Poe was not denied the effective assistance of counsel.

As to the second point for reversal, Poe stated:

"Well, the way I look at it, the way he represented me wasn't effective, because when he appealed to the State Supreme Court and he tried to get the whole habitual criminal act ruled unconstitutional, where he should have got it the way it was applied to me ruled unconstitutional."

Poe is in error in this contention. In the case of *Poe v. State*, 251 Ark. 35, 470 S.W. 2d 818, the original appeal from the conviction, in addition to an attack upon the validity of the statute, it was also contended that utilization of the statute is discretionary with the prosecuting attorney, and thus permits discriminatory application to different habitual offenders. In other words, Poe contended that he was selected to be tried under the habitual criminal statute while the prosecuting attorney ignored the statute in some other cases. We held that the record did not disclose that the prosecuting attorney, in seeking application of the act in this case, acted arbitrarily, capriciously, or willfully discriminated against appellant or a class of which he was a member. This point is not really argued by present counsel who recognizes that Poe offered no additional evidence in the post-conviction hearing that he was singled out for punishment under the act.

At any rate this contention was passed upon originally, and found to be without merit.

Affirmed.